v.

The STATE of Texas, Appellee.

No. 05–93–01378–CV.

Court of Appeals of Texas,
Dallas.

June 30, 1994.

Life B. Medlock and Sandra K. Harward, Dallas, for appellant.

April E. Smith, Dallas, for appellee.

Before THOMAS, ROSENBERG, and BARBER, JJ.

## OPINION

ROSENBERG, Justice.

K.L.M. appeals the trial court's order transferring him from a youth facility to the Texas Department of Criminal Justice. Appellant contends that the trial court abused its discretion in deciding to transfer rather to recommit him to the Texas Youth Commission. We affirm the trial court's order.

## BACKGROUND

On February 3, 1992, appellant and four of his friends drove to a service station. Two friends went inside the store to purchase cold drinks. While inside the store, they became involved in a verbal exchange with Melody and David Carter. The verbal altercation continued outside the store. The Carters' half-brother, Charles Sanders, followed appellant's friends to their car, requested that they get out of the car, and then began hitting them. Appellant reached under the car seat, pulled out a shotgun, and loaded it. Appellant brought the shotgun along with him "in case there was trouble." Sanders reportedly grabbed the gun and began hitting appellant. A shot was fired in the air after which a second shot was fired, fatally striking Sanders in the chest. Appellant was sixteen years of age at the time of the offense.

Appellant pleaded true to the offense of murder in juvenile court. The trial court adjudicated appellant a delinquent and imposed a thirty-five year determinate sentence in the Texas Youth Commission (TYC), with possible transfer at age eighteen to the Texas Department of Criminal Justice (TDCJ). *See* TEX.FAM.CODE ANN. §§ 54.04(d)(3), 54.-11(a), (h) (Vernon Supp.1994). After serving one year of his determinate sentence, and just prior to appellant's eighteenth birthday, the trial court held a release hearing pursuant to section 54.11 of the family code. *See* TEX.FAM.CODE ANN. § 54.11 (Vernon Supp. 1994).

The State introduced the TYC's summary report at the hearing. In its report, the TYC recommended that appellant be recommitted to the TYC with an indeterminate sentence. The TYC considered appellant a high risk to re-offend without further treatment. Appellant was receptive to treatment, but he needed to access remorse for his victim that was free of self-pity and to resolve his negative emotions. Appellant demonstrated the ability to benefit from further treatment, particularly participation in the capital offender program. The TYC felt that transferring appellant to the TDCJ was not in his "therapeutic" best interest given the more "viable option" of remanding him to the TYC.

Carolyn Esparza, appellant's treatment program supervisor at the Giddings State School, testified that appellant had shown significant progress while at the school and could continue to progress in that setting. During his time at the school, appellant's doctor treated him with medication for depression. He did not have any behavioral problems of an aggressive or violent nature. On a five-tier system, appellant achieved junior grade (middle grade). He had not progressed beyond that status because he was not assertive and lacked self-confidence. She described his progress in the system as aver-

age after a year at the school. Appellant also passed the GED and TAAS tests, making him eligible for a high school diploma.

Esparza testified that it would be in society's and appellant's best interest to return appellant to the school for further treatment. She disagreed with the conclusions of the TYC report that appellant was a high risk to re-offend without further treatment. However, she later testified that she "would have to agree" with the TYC report that, without rehabilitative treatment, appellant would be a high risk to re-offend. She testified that, contrary to the TYC report, she believed that appellant was genuinely remorseful for his actions. Appellant participated in the victim impact program twice and had positive performances each time. He had not yet participated in the capital offender program, but she testified that he fit the profile of young men who would benefit from the program. Recommitment to the school would give him the opportunity to participate. However, she acknowledged that space and time limitations may preclude his completing the program. The program operates three times a year with eight students participating in each session. She testified that the school has 150 capital offenders on campus and that only twenty-four of them can go through the program each year. She further testified that, although unlikely, it was possible appellant would not complete the program because of his behavior. If recommitted to the school, Esparza testified that the TYC could release appellant in one year if he successfully completed the capital offender program. If he did not successfully complete the program, appellant could remain at the school until his twenty-first birthday.

Beverly Hibbard, appellant's probation officer, testified about appellant's background and conduct history before his commitment to the TYC. Her investigation showed that appellant did not have a history of aggressive or violent behavior. She found that appellant had been victimized by other children at school and that appellant had developed a "victim's stance" through his family and life experiences. She stated that appellant expressed genuine remorse about the loss experienced by the victim's family. Hibbard felt that recommitment to the TYC would address appellant's rehabilitative needs. She testified that appellant needed continued therapy and needed to complete the capital offender program.

Allen Wallace, a TYC parole officer supervisor, testified that the TYC recently promoted appellant to senior level on the TYC's five-tier scale. He admitted that behavior often tends to improve or remain stable as the release hearing approaches.

Wallace recommended that the trial court recommit appellant to the TYC for further treatment. He testified that he believed that if appellant successfully completed his outlined treatment program at the TYC, appellant would be less likely to re-offend and, therefore, a lesser risk to the community. He agreed that if the trial court returned appellant to the TYC and he successfully completed the capital offender program, appellant could be eligible for release on parole as early as one year later. Wallace testified that appellant's parole release plan was to have appellant go into one of the independent living programs in a halfway house facility. Appellant's parole officer recommended that appellant not be returned home for the independent living program because family dynamics would not produce continued progress and treatment. Wallace testified that if appellant did not meet the criteria for parole release, he would be released from the TYC at age twenty-one. He further testified that if appellant were released at age twenty-one without having met the criteria for parole release, the public would be at risk.

The victim's father, Charles Sanders, testified that he felt appellant was still a danger to the public. He felt that justice would not be served by returning appellant to the TYC. He based his opinion on the fact that appellant received a thirty-five year sentence and that if in the TDCJ, appellant would be required to serve approximately eight years and nine months before being eligible for release. The TYC could release appellant in one to three years. He did not believe that a person's mental attitude can change in that amount of time. He further testified that he believed that time in the TDCJ would benefit appellant in that he would have a chance to

realize the full impact of his actions, realize that he would not want to return to the criminal justice system, and have time to advance his education and learn a trade. Sanders also testified to the negative impact the murder has had on his life.

The victim's wife, Angie Sanders, testified that she felt that appellant was still a danger to the public because he had not had enough time to learn his lesson. She felt appellant should serve out the rest of his sentence in the TDCJ because of the nature of the crime he committed. She also described the murder's negative impact on her life.

At the conclusion of the hearing, the trial court ordered appellant transferred to the TDCJ to serve the remainder of his sentence.

## APPELLANT'S CONTENTIONS

Appellant contends that the trial court abused its discretion in deciding to transfer him to the TDCJ. Appellant maintains that the juvenile justice system is designed to respond to criminality in a significantly different manner from the criminal justice system. He asserts that the statutory purpose of the juvenile justice system is to avoid the harsh consequences of the criminal system and substitute a system of rehabilitation. *See* TEX.FAM.CODE ANN. § 51.01 (Vernon 1986). Appellant argues that the overwhelming weight of the evidence supports a decision to transfer him back to the TYC for further rehabilitative treatment. He argues that there is no evidence to support the trial court's decision to transfer him to the TDCJ. Appellant maintains that the transfer order entered by the trial court is so contrary to the stated purpose of the juvenile statutes and so contrary to the evidence presented at the transfer hearing as to be arbitrary and manifestly unjust.

## TEXAS'S DETERMINATE SENTENCING LAW

The Texas Legislature enacted Texas's determinate sentencing law,[1] effective Sep-

tember 1, 1987, in response to the perceived increase in extremely violent offenses committed by juveniles. *See* Robert O. Dawson, *The Third Justice System: The New Juvenile–Criminal System of Determinate Sentencing for the Youthful Violent Offender in Texas,* 19 ST. MARY'S L.J. 943, 949 (1987–88) (hereinafter *Dawson* ). This legislative response occurred because the conventional juvenile justice system, particularly the TYC, was not responding to the increase in violent juvenile crime in a manner that protected the public. *Id.* at 948.

Under conventional juvenile proceedings, a juvenile committing an offense between the ages of ten and seventeen is subject to a maximum confinement in the TYC until age twenty-one. *See* TEX.FAM.CODE ANN. §§ 51.-02(1), 51.04(a) (Vernon 1986); TEX.HUM.RES. CODE ANN. §§ 61.001(6), 61.084(d) (Vernon 1990 & Supp.1994). The length of the juvenile's confinement in the TYC is subject to the TYC's sole discretion to parole and discharge the juvenile at any time until age twenty-one. *See* TEX.HUM.RES.CODE ANN. § 61.081 (Vernon 1990). A juvenile convicted of a crime averaged only five months in the TYC. *Dawson,* 19 ST. MARY'S L.J. at 952. For violent crimes that are now covered by the determinate sentencing act, the minimum length of stay in the TYC under the conventional system had been one year, two years for capital murder. *Id.*

Lawmakers considered the juvenile justice system's response to the violent juvenile offender inadequate. *Id.* at 952. Justice was not being served with regard to these violent offenders, and lawmakers felt that in some situations a release at age twenty-one resulted in insufficient time served. *See id.* at 950, 952. Because of these deficiencies in the conventional juvenile justice system, lawmakers enacted the determinate sentencing law to provide an option for longer sentencing.

Under the determinate sentencing law, juveniles who have been adjudicated delinquent for one of six serious, violent offenses[2] may

---

1. *See* Act of June 17, 1987, 70th Leg., R.S., ch. 385, §§ 1–21, 1987 Tex.Gen.Laws 1891–98. The legislature has amended the law on several occasions since the original enactment.

2. The offenses covered under the determinate sentencing law are capital murder, attempted capital murder, murder, aggravated sexual assault, aggravated kidnapping, and deadly assault on a police officer or court participant. *See*

receive a determinate sentence of up to forty years' confinement. *See* TEX.FAM.CODE ANN. § 54.04(d)(3) (Vernon Supp.1994). The juvenile serves the first portion of his or her sentence at the TYC with a possible transfer to the TDCJ at age eighteen to serve the balance of the sentence. *See* TEX.FAM.CODE ANN. §§ 54.04(d)(3), 54.11(a), (h) (Vernon Supp.1994).

The determinate sentencing law establishes a justice system that is separate and distinct from the conventional juvenile justice system, one that is part juvenile and part criminal. *See Dawson,* 19 ST. MARY's L.J. at 947. Although juveniles given a determinate sentence are first sent to the TYC and may receive rehabilitative treatment, the determinate sentencing law is also designed to provide criminal penalties for these juveniles by allowing transfer to the TDCJ to complete the remainder of their sentences. *See generally Dawson,* 19 ST. MARY's L.J. at 945–57.

## RELEASE HEARING

When a juvenile is sentenced under the determinate sentencing law, section 54.11 of the family code requires the trial court to hold a release hearing at least thirty days before the juvenile's eighteenth birthday. *See* TEX.FAM.CODE ANN. § 54.11(a), (h) (Vernon Supp.1994). At the hearing, the trial court decides whether to discharge the juvenile, transfer him to the TDCJ, release him under supervision, or remand him to the TYC without a determinate sentence. *See* TEX.FAM.CODE ANN. § 54.11(a), (b), (h), & (i) (Vernon Supp.1994).

At the release hearing, the trial court may consider written reports from probation officers, professional court employees, or professional consultants, in addition to the testimony of witnesses. TEX.FAM.CODE ANN. § 54.11(d) (Vernon Supp.1994). In making its decision, the trial court may consider (1) the experiences and character of the person before and after commitment to the youth commission, (2) the nature of the penal offense that the person committed and the manner in which the person committed the offense, (3) the abilities of the person to contribute to society, (4) the protection of the victim of the offense or any member of the victim's family, (5) the recommendations of the youth commission and prosecuting attorney, (6) the best interests of the person, and (7) any other factor relevant to the issue to be decided. TEX.FAM.CODE ANN. § 54.11(j) (Vernon Supp.1994).

We review the trial court's decision made pursuant to section 54.11 under an abuse of discretion standard. *J.R.W. v. State,* 879 S.W.2d 254, 256–57 (Tex.App.—Dallas, 1994, n.w.h.). In deciding whether the trial court abused its discretion, we review the entire record to determine if the trial court acted without reference to any guiding rules and principles. *Id.* at 257. If some evidence supports the trial court's decision, there is no abuse of discretion. *Id.* at 257–58. We do not substitute our opinion for that of the trial court. We reverse the trial court's decision only if the trial court acted in an unreasonable or arbitrary manner. *Id.* at 257. We may not reverse for an abuse of discretion as long as the trial court's decision was within its discretionary authority. *Id.*

The record shows no evidence of any prior criminal activity or any violent or aggressive behavior by appellant before his commitment to the TYC, no evidence of any aggressive or violent behavior after his commitment to the TYC, no evidence that appellant lacked the ability to contribute to society, and no evidence that appellant is a threat to the victim's family. The great weight of the evidence shows that appellant would benefit from further treatment services offered by the TYC, that he would be a lesser threat to society if he participates in the services offered by the TYC, and that it would be in appellant's best interest to be recommitted to the TYC. Appellant's probation officer, appellant's treatment program supervisor at the Giddings School, and the parole supervisor for the TYC all recommended that appellant be recommitted to the TYC.

Under section 54.11, the trial court does not have to follow the recommendations of state officials at the TYC. *See J.R.W.,* at

TEX.FAM.CODE ANN. § 53.045(a) (Vernon Supp. 1994).

258. The TYC's recommendations are but one factor the trial court may consider in a release hearing. *See* TEX.FAM.CODE ANN. § 54.11(j) (Vernon Supp.1994). The trial court can consider the nature of the crime in determining whether to transfer appellant. *See* TEX.FAM.CODE ANN. § 54.11(j) (Vernon Supp.1994). And the trial court may consider any factor relevant to the issue of whether to transfer. *See* TEX.FAM.CODE ANN. § 54.-11(j) (Vernon Supp.1994).

Here, appellant committed the offense of murder, an extremely serious crime. Appellant notes, and we agree, that every offense under the determinate sentencing law involves a very serious offense. He argues that the seriousness of the offense alone cannot support a transfer to the TDCJ. However, the determinate sentencing law is designed to subject violent juveniles who commit serious crimes to longer sentences than they would have served under the conventional juvenile system. *See generally Dawson*, 19 ST. MARY'S L.J. at 945–57.

Further, the record does not demonstrate that the trial court considered only the nature of the offense in making its decision to transfer appellant. The victim's wife and father testified about the murder's impact on their lives. Both witnesses testified that appellant was still a danger to the public and that they felt appellant needed to serve out the remainder of his sentence in the TDCJ. The father testified that justice would not be served in allowing appellant to return to the TYC for only one to three more years in light of his thirty-five year determinate sentence.

Appellant asserts that this victim impact evidence should not be a factor for the trial court to consider because it would be impossible for any victim's family to consider the rehabilitative intent behind the juvenile justice system [3] and the underlying purposes of the determinate sentencing laws as a "method to possibly save youth without incarceration in a state penitentiary." Thus, appellant maintains that the trial court should not consider the family's concern about the length of time appellant is required to serve for his crime.

■ While rehabilitation is the general purpose of the juvenile justice system, the purpose of the determinate sentencing law is grounded in both the conventional juvenile and criminal justice systems. *See Dawson*, 19 ST. MARY'S L.J. at 947. And unlike the traditional juvenile justice system, the determinate sentencing law seeks to employ the "harsh consequences" of the criminal system by allowing a juvenile sentenced under the law to be transferred to the TDCJ.

■ In enacting the determinate sentencing law, the legislature sought to provide a procedure for responding to violent offenses committed by children younger than the minimum certification age of fifteen who could not be sentenced past the age of twenty-one under the conventional juvenile system. *See id.* at 946. Additionally, the legislature sought to provide an alternative to certification of a fifteen- or sixteen-year-old to criminal court for prosecution as an adult that would allow rehabilitative treatment as well as the possibility of a longer sentence. *See id.* at 947. The determinate sentencing law is designed to provide longer sentences for all juveniles who commit certain violent offenses. *See generally Dawson*, 19 ST. MARY'S L.J. at 945–57. Therefore, a consideration of the length of the determinate sentence, the length of time the offender has served in the TYC, and the total amount of time the offender may serve if recommitted to the TYC is consistent with the statutory purpose of the determinate sentencing law.

Appellant received a thirty-five year determinate sentence. At the time of the release hearing, appellant had served only one year in the TYC. The evidence showed that appellant was a high risk to re-offend without completion of the capital offender program. Appellant had not completed the program. Although it was the TYC's intention that appellant participate in and complete the program, appellant's behavior as well as the

---

3. Appellant relies upon part three of section 51.01 which states that one of the purposes behind the juvenile justice system is "to remove from children committing unlawful acts the taint of criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation...." TEX.FAM. CODE ANN. § 51.01(3) (Vernon 1986).

TYC's time and space limitations might have prevented appellant from completing the program. If recommitted to the TYC, the evidence showed that he might be released one year later. The maximum time appellant would be required to serve at the TYC was three more years, until he reached age twenty-one.

In considering these facts, the trial court could have determined that the possibility of appellant being released from the TYC after only two years, or even the maximum of four years, was insufficient in relation to the nature of his offense and the length of his determinate sentence. After reviewing the entire record, we conclude that the trial court did not abuse its discretion in deciding to transfer appellant to the TDCJ. We overrule appellant's point of error.

We affirm the trial court's order.