COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-374-CV
 
 
  
IN THE MATTER OF J.D.P.
 
 
 
------------
 
FROM THE 89TH DISTRICT COURT 
OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
J.D.P. appeals the order of the trial court transferring him from the custody of 
the Texas Youth Commission (TYC) to the Institutional Division of the Texas 
Department of Criminal Justice (TDCJ) for the completion of his twenty-year 
determinate sentence. In his sole issue, Appellant complains that the trial 
court abused its discretion in transferring him to TDCJ, rather than 
recommitting him to TYC. We will affirm.
I. Factual and Procedural Background
        A 
jury determined that Appellant engaged in delinquent conduct by committing the 
second-degree felony offense of reckless injury to a child, made a deadly weapon 
finding, and assessed Appellant’s punishment at a determinative sentence of 
twenty years in TYC with a possible transfer to TDCJ.  See In re J.D.P., 
85 S.W.3d 420, 423-24, 429 (Tex. App.—Fort Worth 2002, no pet.) (providing 
details concerning Appellant’s fatally shooting a ten-year-old boy with a nine 
millimeter handgun and affirming trial court’s judgment).  After 
Appellant turned eighteen years old and had spent approximately twenty-seven 
months in the custody of TYC, upon TYC’s request, the trial court held a 
hearing pursuant to section 54.11 of the family code and section 61.079(a) of 
the human resources code concerning the transfer of Appellant to TDCJ.  See 
Tex. Fam. Code Ann. § 54.11 
(Vernon Supp. 2004); Tex. Hum. Res. Code 
Ann. § 61.079(a) (Vernon 2001).
        At 
the October 15, 2003 transfer hearing, the State presented the testimony of TYC 
court liaison Leonard Cucolo and the following exhibits: TYC’s general file on 
Appellant, two volumes of Appellant’s security file, Cucolo’s summary of 
TYC’s file, and a handwritten letter by Appellant. The trial court, which had 
presided over the adjudication and disposition of Appellant, also took judicial 
notice of some of the evidence admitted during the prior juvenile proceedings. 
Specifically, Appellant’s attorney reminded the court of Dr. Harvey Martin, a 
psychiatrist, who had testified in Appellant’s disposition proceedings that 
Appellant “was in need of specialized psychiatric care for a period of one 
year or longer.” The trial court indicated that it would review Dr. Martin’s 
testimony. While Appellant did not testify, his mother did on his behalf. 
Appellant also introduced one of his monthly “Individual Case Plan: 
Release/Review Summar[ies].”
        Following 
closing arguments, the court advised Appellant of his appellate rights and took 
the case under advisement to review the documentary evidence. On November 18, 
2003, after reviewing the written evidence, the trial court made findings of 
fact and conclusions of law and ordered that Appellant be transferred to TDCJ 
for the completion of his twenty-year sentence.
II. Standard of Review
        In 
reviewing the trial court’s decision to transfer Appellant from the custody of 
TYC to TDCJ, we employ an abuse of discretion standard. In re J.M.O., 980 
S.W.2d 811, 812-13 (Tex. App.—San Antonio 1998, pet. denied); K.L.M. v. 
State, 881 S.W.2d 80, 84 (Tex. App.—Dallas 1994, no writ). We are to 
review the entire record to determine whether the trial court acted without 
reference to any guiding rules and principles. K.L.M., 881 S.W.2d at 84. 
We may not reverse a trial court’s decision merely because we disagree with 
that decision, so long as the trial court acted within its discretionary 
authority. In re R.G., 994 S.W.2d 309, 312 (Tex. App.—Houston [1st 
Dist.] 1999, pet. denied).
III. Analysis
        When 
a juvenile is given a determinate sentence, upon TYC’s request to transfer the 
juvenile to TDCJ, the trial court is required to hold a hearing pursuant to 
family code section 54.11. Tex. Fam. Code 
Ann. § 54.11; Tex. Hum. Res. Code 
Ann. § 61.079(a). At the transfer hearing, a trial “court may consider 
written reports from probation officers, professional court employees, 
professional consultants, or employees of the Texas Youth Commission, in 
addition to the testimony of witnesses.” Tex. Fam. Code Ann. § 54.11(d).  
At the conclusion of such a hearing, the trial court may either order the return 
of the juvenile to TYC or the transfer of the juvenile to the custody of TDCJ 
for the completion of the individual’s sentence.  Id. § 54.11(I).
        In 
evaluating the evidence and deciding whether to transfer a juvenile to TDCJ, a 
trial court may consider the following: (1) the experiences and character of the 
person before and after commitment to TYC; (2) the nature of the penal offense 
that the person was found to have committed and the manner in which the offense 
was committed; (3) the abilities of the person to contribute to society; (4) the 
protection of the victim of the offense or any member of the victim’s family; 
(5) the recommendations of TYC and the prosecuting attorney; (6) the best 
interests of the person; and (7) any other relevant factor. Id. § 
54.11(k).  Within its discretion, the trial court may assign different 
weights to the factors it considers, and the court need not consider every 
factor.  R.G., 994 S.W.2d at 312.
        Appellant 
has a history of using marijuana, and he became involved with gangs before he 
was committed to TYC. Appellant’s prior delinquent history includes two 
offenses of disorderly conduct in 1999 and 2000 (both were refused and 
dismissed), one offense of criminal trespass on June 18, 2000 (adjudicated to 
probation), and a September 1, 2000 offense of burglary of a habitation 
(adjudicated to probation).  On September 2, 2000, Appellant shot and 
killed a ten-year-old child with a nine millimeter handgun that he had 
reportedly stolen in the September 1, 2000 burglary.  Appellant was 
adjudicated delinquent for the September 2, 2000 shooting and death of the 
child, given a twenty-year determinate sentence, and committed to TYC.
        Following 
his trial, Appellant was admitted to the Orientation and Assessment Unit in 
Marlin on May 24, 2001, and he was subsequently assigned to the Giddings State 
School (GSS) on July 17, 2001, where he remained until the transfer hearing. 
Appellant was transferred to GSS because it houses juveniles who participate in 
the Capital and Serious Violent Offender Treatment Program (CSVOTP). TYC’s 
files indicate that Appellant was considered for one of the limited number of 
spots in CSVOTP, but he failed to participate in the program because of 
behavioral problems.  Cucolo’s summary states, “In addition to 
[Appellant’s] pattern of chronic disruption and behavior problems, he has 
demonstrated a pattern of poor motivation and inconsistent progress in 
correctional therapy.”
        Cucolo 
testified that Appellant’s overall progress in the TYC program was rated as 
fair in November 2001 and again in June 2002 by the Special Services 
Committee.  However, in November 2002, Appellant was recommended for 
transfer to TDCJ. Instead, TYC decided to delay the transfer request and gave 
Appellant six additional months to participate in TYC’s Resocialization 
program.  Despite being given this second chance, Appellant’s behavior 
and progress deteriorated to the point that he was again recommended for 
transfer to TDCJ.
        While 
at GSS, Appellant was determined to have a full scale IQ of 81, which placed him 
in the below average range of intellectual functioning.  To his credit, 
Appellant made progress in academics and earned his GED on November 13, 2001.
        During 
his time at GSS, Appellant’s overall behavior was “extremely poor,” 
according to Cucolo’s summary of TYC’s general and security file.  As 
the State points out, as of September 18, 2003, Appellant had committed 203 
documented incidents of misconduct at GSS.  While Cucolo acknowledged on 
cross-examination that many of the 169 incidents of disruption were minor in 
nature—for example, cussing and not following TYC’s directions—and eight 
were self-referrals, he detailed in his report multiple “serious rule 
violations” spanning between July 10, 2001 to August 23, 2003.  The 
serious rule violations consisted of seven of “danger to others,” six of 
assaults on other students, one assault on TYC staff, six of possession of 
contraband, two of injury to self, four of gang-related behavior, two of fleeing 
apprehension, and one of throwing his urine at TYC staff.  It is therefore 
evident that Appellant’s gang activity and violent behavior, which began 
before he was sent to TYC, continued, in spite of the fact that he was in a 
highly-structured environment at GSS.
        The 
State also introduced into evidence a letter Appellant wrote to his girlfriend 
on August 7, 2003. Cucolo described the letter as gang-related, assaultive, and 
threatening and testified that Appellant was sent to the security unit as a 
result of writing it.  The State directed the court to a portion of the 
letter, in which Appellant admits to being “too jealous to sit back and watch 
his [girlfriend] fuck around wit[h] another nigga-n-shit,” and then states, 
“Fuck that!  That cat would catch a 9mm hollow tip str8 between the 
eyes.”  The State then reminded the court that the reason Appellant was 
sent to TYC was because he had killed a juvenile with a nine millimeter handgun.
        The 
record shows that it was the unanimous recommendation of everyone who worked 
with Appellant at TYC that he be transferred to TDCJ. During the transfer 
hearing, Cucolo and the prosecuting attorney also recommended transferring 
Appellant to TDCJ.  Appellant’s mother testified that she thought 
Appellant should be given the opportunity to mature and receive further 
treatment at TYC, although she acknowledged on cross-examination that she could 
not give any assurances that he would mature or successfully complete TYC’s 
programs.  As the State points out, courts of appeals have determined that 
a trial court does not abuse its discretion in transferring a juvenile to TDCJ 
even when TYC has recommended that the juvenile be returned to TYC.  See 
K.L.M., 881 S.W.2d at 84-85 (upholding transfer to TDCJ where 
juvenile’s probation officer, treatment supervisor at GSS, and TYC’s parole 
supervisor all recommended that juvenile be recommitted to TYC‘s custody); In 
re J.C.D., 874 S.W.2d 107, 108-09 (Tex. App.—Austin 1994, no writ) 
(upholding transfer to TDCJ where TYC recommended return to TYC).  Here, 
the only evidence recommending that Appellant be returned to TYC came from his 
mother.
        Appellant 
points to evidence of his mental health problems and argues that he should have 
been sent back to TYC where he could receive further treatment for his 
behavioral and mental health impairments.  Indeed, TYC’s files reflect 
that Appellant has been diagnosed for several years as suffering from mental 
health disorders such as ADHD that required him to take psychotropic medications 
throughout his confinement at TYC.  Cucolo also testified that at various 
times prior to and during his commitment to TYC, TYC’s mental health 
professionals evaluated Appellant and diagnosed him as having a number of 
serious mental health issues.
        Symptomatic 
of his mental conditions, Appellant has poor decision-making ability, difficulty 
controlling impulses, difficulty concentrating and applying himself, and 
difficulty associating personal conduct and potential consequences.  One 
psychologist, Michael Hilgers, who evaluated Appellant, assessed him as having 
“emerging antisocial traits” based on the “chronic nature of his 
oppositional behaviors towards authority figures, continued verbal aggression in 
response to confrontation, assaults while in a highly structured environment, 
and association with known institutional gang members.”  Hilgers opined 
that because Appellant exhibited these traits in “an environment with strong 
external controls, it is likely that [Appellant] maintains antisocial traits 
that will not shift in response to treatment interventions.”
        Cucolo 
testified that while TYC has specialized programs in Corsicana and Crockett to 
assist and treat emotionally disturbed offenders like Appellant, Appellant was 
never placed in those specialized treatment programs.  During the hearing, 
Appellant’s counsel referred to Dr. Martin’s testimony that Appellant “was 
in need of specialized psychiatric care for a period of one year or 
longer.”  Appellant maintains that the trial court abused its discretion 
in transferring him to TDCJ because he never had and should have been given the 
opportunity to participate in the specialized treatment programs available in 
either Corsicana or Crockett.
        But 
the evidence shows that the reason Appellant went to GSS was so that he could 
participate in and benefit from another specialized treatment program, CSVOTP.  
When Appellant was first assessed at the Marlin facility, his previous treatment 
with the drug Zoloft was gradually discontinued.  TYC staff continued his 
treatment with Ritalin throughout his time at GSS.  Moreover, while at GSS, 
Appellant was involved in group counseling sessions five days each week, and he 
was involved in multiple individual counseling sessions with his primary service 
worker and other professionals, such as psychologist Thomas Talbott.
        According 
to TYC records, Talbott met with Appellant for individual counseling sessions 
between February and June 2003.  Talbott noted that Appellant continued to 
demonstrate inappropriate behaviors at times, frequently blamed others for his 
difficulties, and attempted to deceive others.  Further, Talbott observed 
that Appellant continued to make limited progress in treatment as well as in 
improving his behavior.  As noted above, Appellant’s behavior, attitude, 
and lack of motivation prevented him from participating in CSVOTP.
        Through 
individual counseling sessions with his caseworker, Appellant was 
“repeatedly” reminded of his determinate sentence and encouraged, on 
multiple occasions, to increase his motivation for success.  Despite 
TYC’s efforts, records indicate that Appellant responded to the attempted 
intervention with a hostile attitude and “maintained the same pattern of poor 
motivation, inconsistent progress, and chronic disruption.”
        Further, 
Cucolo’s summary states that all determinate sentence youth committed to TYC, 
including Appellant, are informed of the family code provisions that allow TYC 
to request a juvenile’s transfer to TDCJ if that juvenile does not comply with 
treatment expectations or continues to act out.  Here, Appellant stated 
that he understood the possibility of a transfer to TDCJ existed, but to TYC, 
“[h]e appear[ed] to be unconcerned about this consequence in light of his 
continued disruptive and assaultive behaviors.”
        Cucolo 
stated that, based on his review of Appellant’s records from the 
psychologists, social workers, and others who had worked with and treated 
Appellant at GSS, Appellant’s mental illness was not what prevented him from 
completing the programs offered at GSS.  From this evidence, the court 
could have determined that—despite the group and individual treatment 
Appellant received while at GSS and the second chances given to him, because of 
the opportunity and inability or unwillingness of Appellant to participate in 
CSVOTP, and his continued lack of improvement—further specialized treatment 
would not have been beneficial to Appellant, even though Dr. Martin had 
initially recommended such.  See In re J.R.W., 879 S.W.2d 254, 258 
(Tex. App.—Dallas 1994, no writ) (upholding trial court’s transfer of 
juvenile to TDCJ even though a state psychologist recommended that he be sent 
back to TYC for participation in the SECOR program); In re C.D.R., 827 
S.W.2d 589, 592-93 (Tex. App.—Houston [1st Dist.] 1992, no writ) 
(rejecting juvenile’s claim that he should have been returned to a TYC 
specialized sex offender program).
        In 
this case, Appellant caused the death of ten-year-old child and was given the 
maximum determinate sentence for a second-degree felony.  See Tex. Fam. Code Ann. §§ 53.045(a)(8) 
(concerning injury to a child) (Vernon 2002), 54.04(d)(3)(B) (providing 
twenty-year maximum determinate sentence for second-degree felonies) (Vernon 
Supp. 2004); Tex. Penal Code Ann. 
§ 22.04(e) (Vernon 2003) (providing that reckless injury to a child is 
second-degree felony).  Among the penological goals of the juvenile justice 
system, rehabilitation is listed in the family code, along with punishment, 
accountability, and the protection of the welfare of the community. See Tex. Fam. Code Ann. § 51.01 (Vernon 
2002).  As the Dallas Court of Appeals observed in K.L.M., “the 
determinate sentencing law is designed to subject violent juveniles who commit 
serious crimes to longer sentences than they would have served under the 
conventional juvenile system.”  881 S.W.2d at 85 (citing Robert O. 
Dawson, The Third Justice System: The New Juvenile-Criminal System of 
Determinate Sentencing for the Youthful Violent Offender in Texas, 19 St. Mary’s L.J. 943, 945-47 
(1987-88)); see also Justice Ed Kinkeade, Appellate Juvenile Justice 
in Texas—It’s a Crime! Or Should Be, 51 Baylor L. Rev. 17, 37-38, 40-42 (1999) 
(discussing Texas Legislature’s expansion of determinative sentencing as a 
component of holding juveniles more accountable for their offenses).
        At 
the end of the hearing concerning Appellant’s transfer to TDCJ, the trial 
court discussed what would happen if it sent Appellant back to TYC instead of to 
TDCJ.  The State represented to the court that if it sent Appellant back to 
TYC, when he turned twenty-one, he would be released from TYC and placed on 
parole for the remainder of his sentence.  See Tex. Hum. Res. Code Ann. § 61.084(g) 
(Vernon Supp. 2004).  The trial court, recognizing the seriousness of 
Appellant’s violent offense, could have taken into consideration the 
possibility that Appellant might only serve three more years before his release 
from TYC and that the goals of punishment, accountability, and the protection of 
the community would be better served by transferring Appellant from TYC to 
TDCJ.  See Tex. Fam. Code Ann. 
§ 51.01; K.L.M., 881 S.W.2d at 85-86 (stating trial court could consider 
consequence of sending juvenile back to TYC); see also J.R.W., 879 S.W.2d 
at 258 (stating trial court has no duty to rehabilitate a juvenile, but only 
makes a determination whether to transfer the juvenile to TDCJ or send him or 
her back to TYC).
IV. Conclusion
        After 
a complete review of the record, we cannot say that the trial court abused its 
discretion in declining to send Appellant back to TYC and in transferring him 
from TYC to TDCJ.  Accordingly, we overrule Appellant’s sole issue and 
affirm the trial court’s order.
  
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
  
PANEL F:   CAYCE, 
C.J.; GARDNER and MCCOY, JJ.
 
DELIVERED: July 15, 2004