

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00112-CV

## IN THE MATTER OF J.D., A JUVENILE,

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2010-316-J**

## MEMORANDUM OPINION

In one issue, appellant, J.D., argues that the trial court abused its discretion by refusing to release him on parole and, instead, ordering his transfer from the Texas Juvenile Justice Department ("TJJD") to the Institutional Division of the Texas Department of Criminal Justice ("TDCJ").[1]  We affirm.[2]

---

[1] Effective December 1, 2011, the Texas Youth Commission was renamed the Texas Juvenile Justice Department.  *See* TEX. HUM. RES. CODE ANN. § 201.001(a)(4), (b)(2) (West 2013).  Accordingly, throughout this opinion, the former Texas Youth Commission will be referred to as the Texas Juvenile Justice Department or TJJD.

[2] All pending motions are dismissed as moot.

## I.    BACKGROUND

In the instant case, appellant was adjudicated guilty of aggravated robbery and received a determinate sentence of twenty-five years.  The trial court rendered a disposition order committing appellant to TJJD for the sentence.  The record reflects that appellant was a party—the getaway driver—to the offense.  Specifically, appellant drove three others to a convenience store in Bellmead, Texas, owned by Najamal Haq.  While appellant waited in the vehicle, the accomplices fatally stabbed Haq with knives.  After the commission of the offense, appellant drove the vehicle away from the scene.  According to Officer Haywood Sawyer of the Bellmead Police Department, one of the accomplices, Mario Escobedo, has not been apprehended and is believed to have absconded to Mexico.  Charles Terrell, a McLennan County Juvenile Probation Officer, testified that appellant is not a United State citizen and that, because of his conduct, the United States Immigration and Customs Enforcement ("ICE") placed a hold on him on August 24, 2010.  A subsequent notice dated April 1, 2013, extended the hold and stated that appellant "is an alien subject to removal from the United States."

In any event, because appellant was sixteen years old at the time of the hearing on the State's petition for determinate sentencing, it was not possible for appellant to serve the required three-year minimum sentence in TJJD before his nineteenth birthday. *See* Act of May 5, 2011, 82d Leg., R.S., ch. 85, § 1.007, 2011 Tex. Gen. Laws 366, 420 (codified as amended at TEX. HUM. RES. CODE ANN. § 245.051 (West 2013)) (amending former TEX. HUM. RES. CODE ANN. § 61.081).  Consequently, TJJD requested a hearing to decide whether appellant should be released on adult probation or transferred to TDCJ

to complete his twenty-five-year determinate sentence. TJJD also filed a report recommending that appellant be released on adult probation. Because TJJD recommended that appellant be released on parole, and because appellant did not serve at least three years of his determinate sentence, the trial court was obligated to conduct a transfer hearing. *See* TEX. HUM. RES. CODE ANN. § 245.051(c)(2); *see also* TEX. FAM. CODE ANN. § 54.11(a) (West Supp. 2012).

At the hearing, several witnesses testified about whether appellant should be released on parole or transferred from TJJD to TDCJ. At the conclusion of the evidence, the trial court ordered that appellant be transferred from TJJD to TDCJ. In its transfer order, the trial court noted that it considered the following, among other factors:

1. The experiences and character of the Respondent [appellant] before and after commitment to the [TJJD];

2. The nature of the penal offense that the Respondent was found to have committed and the manner in which the offense was committed;

3. The ability of Respondent to contribute to society;

4. The protection of the victim or any members of the victim's family;

5. Recommendations of the youth commission and prosecuting attorney;

6. The best interests of Respondent; and

7. Any other factor relevant to this issue to be decided.

*See* TEX. FAM. CODE ANN. § 54.11(k). This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A trial court's decision to transfer a juvenile from TJJD to TDCJ is reviewed for an abuse of discretion. *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—San Antonio 2006, pet. denied); *In re J.D.P.*, 149 S.W.3d 790, 792 (Tex. App.—Fort Worth 2004, no pet.). In determining whether the trial court abused its discretion, we review the entire record to determine if the trial court acted arbitrarily, unreasonably, or without reference to any guiding principles or rules. *In re D.L.*, 198 S.W.3d at 229; *see In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.). "The trial court's decision will be upheld if the record contains some evidence to support it." *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.); *see In re D.L.*, 198 S.W.3d at 229.

Prior to reaching the age of nineteen, a determination must be made whether a juvenile serving a determinate sentence will be released under supervision or transferred to the TDCJ to complete his sentence. *See* Act of May 5, 2011, 82d Leg., R.S., ch. 85, § 1.007, 2011 Tex. Gen. Laws 366, 420 (amended 2012). If the TJJD recommends release of a juvenile who was sentenced for a felony of the first degree and who has not served at least three years in the TJJD, the court must hold a hearing to determine whether the juvenile should be released under supervision or transferred to the TDCJ. TEX. HUM. RES. CODE ANN. § 245.051(c)(2); *see* TEX. FAM. CODE ANN. § 54.11(a). After evidence has been presented and the hearing has concluded, the trial court may order: (1) the return of the juvenile to TJJD with or without approval for release under

supervision; or (2) the juvenile transferred to TDCJ to complete the imposed sentence. TEX. FAM. CODE ANN. § 54.11(i)-(j).

When conducting a transfer hearing, a trial court may consider written reports provided by "probation officers, professional court employees, professional consultants, or employees of the [Texas Juvenile Justice Department]," as well as the testimony of witnesses. *Id.* § 54.11(d). Additionally, when making a decision whether to approve the TJJD's recommendation for release under supervision, the trial court may take into account,

> the experiences and character of the person before and after commitment to the [TJJD], the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the [TJJD] and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

*Id.* § 54.11(k). The trial court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed. *In re N.K.M.*, 387 S.W.3d at 864; *see In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied). Moreover, the trial court can assign differing weights to the factors considered. *In re N.K.M.*, 387 S.W.3d at 864; *see In re J.J.*, 276 S.W.3d at 178.

### III. ANALYSIS

Here, the trial court heard eight different witnesses and was provided with multiple reports and exhibits for consideration. Both favorable and unfavorable evidence was presented. In particular, Leonard Cucolo, a TJJD Court Liaison, testified and filed a report documenting his interactions with appellant. Cucolo recommended

that appellant be released on parole for a variety of reasons, including appellant's juvenile record, psychological evaluations, academic progress, behavior in TJJD, and treatment history. Cucolo noted that appellant accepted responsibility for his role in the offense, participated in vocational training in the area of welding, and completed several treatment programs. Cucolo testified that appellant's behavior while at TJJD was "excellent." However, in response to further questioning, Cucolo noted that appellant had two behavioral violations while at TJJD—one involving the possession of a pen and gauze while he was in a tattoo-removal program and the other involving appellant's brother allegedly bringing appellant money in violation of the rules. Also, Terrell acknowledged on cross-examination that appellant had engaged in good behavior while at TJJD and that he was cooperative.

Dr. Enrique Covarrubias, a psychologist at the Giddings State School, opined that, despite only treating appellant for two months, appellant is genuine and believable and that he has no concerns about appellant being released on parole. Dr. Covarrubias echoed Cucolo's recommendation that appellant should be released on parole. Dr. Kathryn Hallmark, another psychologist, testified that she also evaluated appellant and determined that appellant should be released on parole so long as he continues to receive counseling. Appellant's mother and father also testified. They both stated that appellant was respectful and that they did not know of appellant's involvement in the underlying offense until one of the accomplices was arrested and appellant admitted his role in the offense. Appellant's father stated that appellant is not a violent person and that appellant has changed since entering TJJD.

On the other hand, the State presented evidence, including surveillance footage, depicting the gruesome nature of the offense. Officer Sawyer recalled that he responded to the scene shortly after the incident occurred and observed that Haq was bleeding profusely and

> had three lacerations about one inch a piece in the abdominal area or in the stomach area, also had a large laceration to his left arm. The laceration to the left side of the body in the stomach area had about a quarter inch intestine protrusion, his intestines was [sic] bulging out.

Terrell described the offense as "pretty severe," and the record reflected that Haq died as a result of the injuries sustained during the incident. Officer Sawyer further testified that one of the accomplices told police that appellant was laughing after the incident transpired.

Moreover, Dr. Hallmark recounted that appellant admitted that his involvement in the robbery was not confined to being the getaway driver. In what appears to be an attempt to conceal evidence, appellant told Dr. Hallmark that he instructed one of the accomplices to get rid of the shirts they were wearing at the time of the incident. Dr. Hallmark also acknowledged that she wrote the following in her report: "[Appellant's] avoidance of full disclosure of his substance abuse, criminal history[,] and committing [this] offense is concerning." Because of this, there was a delay in enrolling appellant in treatment for capital offenders. Dr. Hallmark also wrote that:

> had he [appellant] not been referred into higher intensity of treatment programing, he would likely not have processed and disclosed fully. While there is a possibility that he's simply telling what he believes, he must say, in order to receive a parole recommendation. His reasoning for avoiding disclosure is not uncommon for juveniles in treatment.

Dr. Hallmark later clarified that, after speaking with appellant for three hours, she did not believe appellant to be deceitful, though "he minimized at times."

Furthermore, appellant's mother testified that, though appellant admitted his involvement shortly after the incident, she learned new things about appellant's involvement in the robbery after appellant participated in counseling. This testimony implies that appellant was not as forthcoming about his involvement in the robbery initially. Finally, Haq's son, Mohammad Hamza, expressed that Haq's death had a significant impact on him and his family. Hamza quit college to run his father's convenience store, and Haq's wife became depressed after Haq's death. Hamza also stated that he has safety concerns if appellant was released on parole.

Clearly, the record contains conflicting evidence supporting appellant's release on parole and his possible transfer to TDCJ. It is well established that the trial court is permitted to assign varying amounts of weight to the evidence, as well as believe or disbelieve the witnesses' testimony. *See In re N.K.M.*, 387 S.W.3d at 864; *State v. Ross*, 32 S.W.3d 853, 854 (Tex. Crim. App. 2000) (explaining that the factfinder is the sole judge of the credibility of the witnesses); *see also In re L.C.*, No. 04-12-00326-CV, 2013 Tex. App. LEXIS 4238, at *9 (Tex. App.—San Antonio Apr. 3, 2013, no pet.) (mem. op.). Furthermore, the evidence presented touches on several of the factors articulated in section 54.11(k) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.11(k). Moreover, we note that the recommendations of Cucolo and Drs. Covarrubias and Hallmark are but one factor in the number of factors that the trial court was empowered to consider. *See id.*; *see also In re N.K.M.*, 387 S.W.3d at 864; *In re J.J.*, 276 S.W.3d at 178;

*K.L.M. v. State*, 881 S.W.2d 80, 84-85 (Tex. App.—Dallas 1994, no pet.) ("Under section 54.11, the trial court does not have to follow the recommendations of state officials at the [TJJD]."). In fact, among the factors the trial court could consider are the nature of the offense and the protection of the victim or any member of the victim's family—factors in which the testimony adduced is uncontroverted. *See* TEX. FAM. CODE ANN. § 54.11(k). In addition, we emphasize that all inferences are taken in favor of the trial court's ruling, and the decision is to be upheld even if the appellate court would weigh the factors differently. *See In re N.K.M.*, 387 S.W.3d at 864; *In re D.L.*, 198 S.W.3d at 229; *K.L.M.*, 881 S.W.2d 84. Therefore, based on the foregoing, we find that there is some evidence in the record to support the trial court's transfer order. *See In re N.K.M.*, 387 S.W.3d at 864; *In re D.L.*, 198 S.W.3d at 229; *K.L.M.*, 881 S.W.2d 84. Accordingly, we cannot say that the trial court abused its discretion in ordering appellant's transfer from TJJD to TDCJ to complete the remainder of his twenty-five-year determinate sentence. *See In re D.L.*, 198 S.W.3d at 229; *In re J.D.P.*, 149 S.W.3d at 792. We overrule appellant's sole issue on appeal.

## IV. CONCLUSION

Having overruled appellant's sole issue on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed September 26, 2013
[CV06]