**Affirmed Opinion and Memorandum Opinion filed March 28, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00078-CV

## IN THE MATTER OF S.S.C., Appellant

**On Appeal from the County Court at Law No. 2
Brazoria County, Texas
Trial Court Cause No. JV23666**

## MEMORANDUM OPINION

In his sole issue, appellant S.S.C. appeals the trial court's order transferring him from the custody of the Texas Juvenile Justice Department (TJJD) to the Texas Department of Criminal Justice's Institutional Division (TDCJ-ID). He contends that the trial court abused its discretion in reaching its determination. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2021, after a disposition hearing was held, a Brazoria county court at law found that appellant engaged in two first-degree felony offenses of

aggravated robbery at a Pearland AT&T retail store that occurred on March 10, 2020. The trial count found appellant, seventeen years old at the time of his sentencing, "in need of rehabilitation and protection of the public and the child require that a disposition be made." The trial court found appellant eligible for determinant sentencing and ordered appellant "committed to the Texas Juvenile Justice Department for a five (5) year Determinate Sentence." The trial court's order also made findings specific to appellant's placement: that appellant's home was unsuitable and that appellant's commitment to the Texas Juvenile Justice Commission was proper because "[t]he repeated nature of the delinquent conduct," the "[s]eriousness of the offense(s)," "[t]he Texas Juvenile Justice Department can provide a stricter environment more conducive to the child's needs," and "[t]he Texas Juvenile Justice Department can provide the intensive counseling this child requires."

The record shows that appellant was admitted to TJJD on September 30, 2021, where he spent his first 21 days in an orientation and assessment program before being transferred a long-term facility where he was situated for 32 days. At the long-term facility he was noted to have been promoted to "Stage 2," and "passing all of his classes" and "didn't have any major behaviors on [sic] the dorm." Though he was assessed for treatment for psychiatric services, he had not received these or many other services before his November 22, 2021 transfer to Harris County jail on a bench warrant on unrelated charges. Appellant remained in Harris County jail for the remainder of the period he had been ordered to TJJD custody.

Months before his nineteenth birthday, on December 6, 2022, the TJJD initiated a transfer proceeding in the Brazoria county court, calling for the trial court to determine whether appellant would be transferred from TJJD custody to

the Institutional Division or Parole Division of the Texas Department of Justice.

During the hearing the TJJD presented testimony from the TJJD assigned court liaison, Alanna Bennett, and through her offered its two exhibits: a letter from the TJJD initiating the transfer proceeding, and the TJJD's "Masterfile" pertaining to appellant, ("File"). In addition to many of the case pleadings and orders, various documents, including pleadings and orders pertaining to cases pending in Harris County and Montgomery County, the File contained:

a three-page summary report of the File;

a contents page;

Certification of Vital Records;

Social Security Card;

Bench Warrant for delivery of appellant from McLennan County Correctional Facility Issued to the Harris County District Court on November 19, 2021;

Bench Warrant for delivery of appellant;

Confidential Psychological Evaluation, dated October 14, 2021;

Forensic psychological evaluation, dated August 4, 2021;

Offense History Report, dated December 23, 2022;

R-PACT Summary Report completed on September 23, 2022;

Youth Behavior Summary, dated December 23, 2022; and

Correctional Care System, Chronological Record, compiled by inquiry on January 25, 2023

The TJJD's summary report contained the following recommendation:

[S.S.C.] committed to TJJD for the offense of aggravated robbery. He has previously been on juvenile probation for multiple offense, [sic] and is current awaiting charges in Harris County for aggravated robbery and aggravated sexual assault. He has completed approximately 20 months of his five-year sentence; however, he was only in TJJD for two months.

Due to the short time [S.S.C.] had in TJJD, he has not participated in any specialized treatment and is unable to demonstrate a reduced risk to re-offend prior to return to the community. As such, [S.S.C.] is seen as representing a risk to the community if released. It is believed that the welfare of the community requires his transfer. [S.S.C.] needs to be in a highly structured and supervised environment to prevent him from reoffending.

Therefore, it is the recommendation of the Texas Juvenile Justice Department that [S.S.C.] be transferred to the Institutions Division of the Texas Department of Criminal Justice.[1]

During the hearing however, Bennett expressly provided no recommendation:

TJJD's attorney: So what is your opinion on what to do with [S.S.C.] right now, and why?

Bennett: The agency does not have a recommendation. Due to his short length of stay with us, we are not able to make a reasonable assessment of either recommendation for parole or for ID.

TJJD's attorney: Okay. And is there anything else in this master file that you think the Judge needs to know?

Bennett: No, I believe not.

Though his attorney did not present any witnesses, at the conclusion of the transfer hearing, appellant's attorney argued that because appellant was sent to Harris County jail on a bench warrant shortly after he received the determinant sentence, he was unable to participate in the services that TJJD was going to provide, and the "fair thing to do" would be to release him on parole. At the conclusion of the hearing, the court stated that it considered "the evidence and

---

[1] An additional document titled "Youth Behavior Summary: Transfer to TDCJ-ID" (dated 12/23/22) and signed by a case manager and the case manager's supervisor provides a similar recommendation: "This youth has not been afforded the opportunity to receive all the services he needs while in TJJD. He is being referred to TDCJ-**ID** because he has not completed any services and he is coming up on his 19th birthday."

4

arguments of counsel, Petitioner's exhibits as admitted, testimony of Ms. Bennett. . . [and] all the other factors considered under 54.11," and ordered that "[appellant] should be transferred to the Texas Department of Criminal Justice Institutional Division for completion of his sentence."

## II. ISSUES AND ANALYSIS

On appeal, appellant argues that the trial court abused its discretion, pointing to the lack of evidence before the court to support the decision in light of appellant's limited time and opportunity to participate under the TJJD, and contends that had appellant been incarcerated a few months he would have likely been released.

## A. Applicable Laws and Standard of Review

The TJJD called for a transfer determination from the trial court because appellant was adjudicated for delinquent conduct constituting a first-degree felony and had not served the minimum three years of his sentence, and therefore TJJD could not, on its own, release him under supervision without the trial court's approval. Tex. Hum. Res. Code §§ 245.051(c) and 245.151.

When reviewing the trial court's decision to transfer a juvenile from the TYC to the TDCJ, the appellate court employs an abuse of discretion standard. *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *D.G.W. v. State*, No. 01-22-00698-CV, 2024 WL 86501, at *3 (Tex. App.—Houston [1st Dist.] Jan. 9, 2024, no pet. h.) (mem. op., not designated for publication); *see Interest of J.D.T.*, No. 14-20-00689-CV, 2022 WL 3205088, at *2 (Tex. App.—Houston [14th Dist.] Aug. 9, 2022, no pet.) (mem. op., not designated for publication) ("The trial court did not abuse its discretion for acting without statutory authority").

In considering whether to transfer appellant to TDCJ-ID for confinement, the trial court could consider the following factors,

> … the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility,
>
> the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed,
>
> the abilities of the person to contribute to society,
>
> the *protection* of the victim of the offense or any member of the victim's family,
>
> the *recommendations* of the Texas Juvenile Justice Department, county juvenile board, local juvenile probation department, and prosecuting attorney,
>
> the best interests of the person, and
>
> any other factor relevant to the issue to be decided.

Tex. Fam. Code § 54.11(k).

We review the entire record to determine if the trial court acted arbitrarily, unreasonably, or without reference to these considerations. *See In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.). Evidence of each listed factor is not required, and a juvenile court may assign different weights to the factors available for consideration. *See In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied).

**B. Did the trial court abuse its discretion when it ordered appellant's transfer from TJJD to the Texas Department of Criminal Justice's Institutional Division (rather than its Parole Division)?**

We agree with appellant both that his experience post-adjudication was a relevant factor for the trial court to consider in evaluating his placement, and that

for a significant period prior to the transfer hearing he was not provided TJJD's services to aid his rehabilitation. When he was first admitted to the system he underwent extensive psychological evaluation, and was recommended individual therapy and other forms of mentoring and counseling. In his two months at the TJJD facilities he was observed to progress at a reasonable pace without an significant infraction.

The record does not show exactly what individual therapy would have been provided appellant, but does contain numerous pages of daily summaries describing the classes and discussions appellant was assigned to participate in at the state's juvenile facility. For example:

> For group today, we discussed the skill of empathy. We discussed how to relate to what someone else may be going through by putting yourself in their shoes. I gave the example of being able to relate to growing up with one parent, having parents that have been or are incarcerated, and having someone close to you die. I gave examples of how different family dynamics could result in different morals, values and ethics. Each youth was given an opportunity to discuss what their family dynamics was and what kinds of morals, values and ethics they learned in from their upbringing. Some youth were able to identify that their upbringings were the same yet the morals, values and ethics were different. We then discussed death due to some of the youth recently having had family members died. The group was able to show empathy for their peers and stated how they have felt having lost people close to them.
>
> . . .
>
> Todays group was about reasonable mind, wise mind and emotional mind. We talked about what each one means. Reasonable mind is when you are ruled by facts, reason and logic. Values and feelings are not important. Wise mind is the middle path. Its when you see the value of both reason and emotion. Emotional mind is when you are moved by your mood, feelings and urges to do or say things. Facts, reason and logic are not important when you are in emotional mind.

Each of these entries ends with a notation, "[appellant] is on bench warrant

and did not participate in group." While appellant's stay in the County Jail for the balance of his time in TJJD custody deprived him of the opportunity to participate its services, we disagree with appellant's suggestion that the trial court could have cured that error and achieved fairness by releasing appellant on parole.[2]

The trial court could have reasonably considered the seriousness of appellant's violent offense—which the original court could have assessed up to a 40-year determinate sentence. Similarly, the court was at liberty to consider appellant's juvenile record which included multiple assaults, aggravated robberies, and criminal mischief. In light of these considerations, the trial court could have concluded "the goals of punishment, accountability, and the protection of the community" would be better served by transferring him to TDCJ-ID custody. *See In re L.G.G.*, 398 S.W.3d 852, 862 (Tex. App.—Corpus Christi 2012, no pet.); *see also, e.g., In re W.R., Jr.*, No. 04–08–00747–CV, 2009 WL 1804114, at *3 (Tex. App.—San Antonio. Jun. 24, 2009, no pet.) (mem. op., not designated for publication) (the underlying offense was violent and juvenile's record included burglary, possession of marihuana, and assault on a public servant).

Although Ms. Bennett testified at the hearing that the TJJD had "no recommendation", the trial court was not bound by that testimony to discount the recommendations in the file. *Cf. K.L.M. v. State,* 881 S.W.2d 80, 84–85 (Tex. App.—Dallas 1994, no writ)("the trial court does not have to follow the recommendations of state officials. . ." in a release hearing). The court may have chosen to give weight to the written recommendations of TJJD officials found in the File that were admitted into evidence at the hearing. See Tex. Fam. Code §

---

[2] Though it is not clear that evidence of the availability of the Institutional Division's similar opportunities were before the court, the trial court could have reasonably considered, that in light of those lost opportunities in TJJD facilities, the similar services and opportunities provided by the Institutional Division would more adequately serve appellant's best interest.

8

54.11(k).

Considering TJJD's written recommendations available in the File, together with the seriousness of the underlying offense, and appellant's prior adjudicated juvenile criminal history, we cannot conclude the trial court abused its discretion.

### III. CONCLUSION

We affirm the trial court's order.

/s/    Randy Wilson
Justice

Panel consists of Justice Hassan, Justice Poissant and Justice Wilson.