In the Matter of J.M.O.

No. 04–98–00002–CV.

Court of Appeals of Texas, San Antonio.

Sept. 30, 1998.

Jacob Bruce Henry, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before LÓPEZ, GREEN and DUNCAN, JJ.

## OPINION

LÓPEZ, Justice.

J.M.O. appeals the trial court's order transferring him from the Texas Youth Commission to the Texas Department of Criminal Justice to serve the remainder of his forty year sentence on a capital murder conviction. J.M.O. raises one issue on appeal, he contends he was denied his right to confrontation under the Sixth and Fourteenth Amendments of the U.S. Constitution at the release/transfer hearing. We affirm the judgment of the trial court.

1. Factors which the trial court can consider when determining transfer or release include: the nature of the penal offense; the manner in which the offense was committed; experiences

## STATEMENT OF FACTS

In April 1995, J.M.O. was convicted of capital murder and sentenced by a jury to a forty year determinate sentence. As a result of his conviction, J.M.O. was committed to the Texas Youth Commission (TYC). On August 27, 1997, a release/transfer hearing was held prior to J.M.O.'s eighteenth birthday to determine the appropriateness of transferring him to the Texas Department of Criminal Justice—Institutional Division. *See* TEX. FAM.CODE ANN. § 54.11 (Vernon 1996).

State witness testimony at the hearing consisted of a TYC administrator and the father of the victim. The TYC administrator testified pursuant to a summary report which he made available to the Court and J.M.O. prior to the hearing. The report consisted of the following summaries: J.M.O.'s criminal history, psychological evaluation, academic assessment, behavioral assessment, treatment assessment and a TYC recommendation. This report was used by the trial court in making its decision.[1] While the TYC administrator had met with J.M.O., the information within the report was compiled by other individuals who had treated and worked with J.M.O.

During the hearing, the TYC administrator was specifically questioned about J.M.O.'s behavior while committed at TYC. The trial court permitted the administrator to testify that J.M.O. allegedly tried to recruit other students into a gang. The TYC administrator was not present at any time J.M.O. attempted to recruit students. Rather his testimony was based on a report submitted by a TYC house-parent who had been informed by other juveniles. This report was included in the behavior summary report considered by the trial court at the release/transfer hearing.

## STANDARD OF REVIEW

■ When reviewing the trial court's decision to transfer a juvenile from TYC to the Texas Department of Criminal Justice, the

and character of the juvenile before and after commitment to TYC; and a recommendation of the youth commission. TEX. FAM.CODE ANN. § 54.11(k) (Vernon 1996).

reviewing court employs an abuse of discretion standard. *See K.L.M. v. State*, 881 S.W.2d 80 (Tex.App.—Dallas 1994, no writ); *In the Matter of C.L. Jr.*, 874 S.W.2d 880 (Tex.App.—Austin, 1994, no writ). The reviewing court must view the entire record to determine if the trial court acted without reference to guiding rules and in an arbitrary manner. *K.L.M.*, 881 S.W.2d at 82; *C.L. Jr.*, 874 S.W.2d at 886. If some evidence exists to support the trial court's decision there is no abuse of discretion. *Id.*

## ISSUE

■■■ J.M.O. contends that by allowing the TYC administrator to testify regarding the incident, he was denied the right to confront pursuant to the Sixth and Fourteenth Amendments.[2] J.M.O. argues that a juvenile in a release/transfer hearing is similar to a parolee who faces parole revocation. A finding for the revocation of parole requires that the facts be verified and knowledge concerning the parolee's behavior be accurate. *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Due process requires that a parolee have the opportunity to confront and cross-examine witnesses at a parole revocation hearing. *Id.* at 489, 92 S.Ct. 2593. Like a parolee, J.M.O. argues, a juvenile has a substantial liberty interest in the outcome of a release/transfer hearing. Therefore, due process would require that a juvenile have the right to confront and cross-examine in a release/transfer hearing.

## DISCUSSION AND ANALYSIS

■■■ Under Texas case law, the release/transfer hearing is not a trial. Unlike a trial, the juvenile is not being adjudicated or sentenced. Rather the trial court is merely determining whether the juvenile should be incarcerated or released. *In the Matter of C.L. Jr.*, 874 S.W.2d 880, 885 (Tex.App.—Austin 1994, no writ). Because this hearing

is not part of the guilt/innocence determination, due process requirements are not as stringent as those in an actual trial. *In the Matter of D.S.*, 921 S.W.2d 383, 387 (Tex. App.—Corpus Christi 1996, writ dism'd w.o.j.). In *D.S.*, the court equated the release/transfer hearing to a transfer for a criminal conviction hearing. *Id.* Under section 54.02, the trial court is authorized to consider the same type of reports in making a determination to waive jurisdiction. TEX. FAM.CODE ANN. § 54.02(e) (Vernon 1996).[3] In addition, like the release/transfer hearing, the juvenile must be provided those reports before they are admitted. *Id.* Should there be a question regarding the genuineness of these reports, the juvenile's attorney may call the authors of the reports for the purpose of cross-examination. *In the Matter of D.S.*, 921 S.W.2d at 387. This process adequately provides for the confrontation rights of the juvenile. *Id.; but see Alford v. State*, 806 S.W.2d 581 (Tex.App.—Dallas 1991), *aff'd*, 866 S.W.2d 619 (Tex.Crim.App.1993) (stating that a constitutional right to confrontation does not exist in a discretionary transfer hearing).

■■■ In the present case, J.M.O. was given a copy of the TYC administrator's report prior to the hearing. Thus, he had the opportunity to call any authors and witnesses and test the veracity of their findings. J.M.O. chose not to call the witnesses. On cross-examination J.M.O. was able to thoroughly question the TYC administrator on allegations of gang activity and involvement for inconsistencies. In addition, he was able to extract positive behavioral experiences while at TYC. The TYC administrator acknowledged that J.M.O. participated and completed three rehabilitative programs, obtained a G.E.D. and had worked as a janitor. Given these facts and the less stringent due process requirements which exist in re-

---

2. The Sixth Amendment provides that in all criminal prosecutions the accused has the right "to be confronted with witnesses against him." U.S. CONST. amend. VI. The extension of the Sixth Amendment to parole revocation hearings is made through the Due Process Clause of the Fourteenth Amendment. *Ex parte Taylor*, 957 S.W.2d 43, 45 (Tex.Crim.App.1997).

3. Section 54.02 provides, "At the transfer hearing the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses."

lease/transfer hearings, J.M.O.'s right to confrontation was not offended.

It should be noted that the right of confrontation in parole revocation proceedings is limited and not absolute. *Ex parte Taylor,* 957 S.W.2d 43, 45 (Tex.Crim.App. 1997). Even in the context of a criminal trial, the right to confront has been limited. *See Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (holding that a face-to-face encounter is not required in every instance of witness testimony). In *Taylor,* the Court of Criminal Appeals held that the lack of a face-to-face confrontation of a witness in a parole revocation hearing was mitigated by the ability of the appellant to cross-examine and hear witness testimony. *Id.* at 46. As noted above, in this case J.M.O. had the opportunity to call the authors of the reports relied upon by the TYC administrator but did not do so. In addition, J.M.O. was able to cross-examine the TYC administrator and test the veracity of his testimony.

The judgment of the trial court is affirmed.