TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00397-CV






In the Matter of S. C.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. J-21,433, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In March 2002, the trial court found that S.C., who was sixteen at the time, had
committed the offense of capital murder when he shot and killed Jesse Rangel, Jr., during an
aggravated robbery, adjudicated him delinquent, and committed him to the custody of the Texas
Youth Commission for a determinate forty-year sentence. In February 2006, TYC asked to have S.C.
transferred from TYC custody to the Texas Department of Criminal Justice to serve the remainder
of his sentence. On April 6, 2006, the trial court held a hearing on TYC's transfer request (the
"transfer/release hearing"), see Tex. Fam. Code Ann. § 54.11 (West Supp. 2007) (on receipt of TYC
request for transfer to TDCJ, court must hold hearing and decide whether to transfer juvenile or
release juvenile under supervision), and ordered S.C. transferred to TDCJ custody for the completion
of his sentence. S.C. appeals, arguing that the trial court erred in admitting into evidence a recent
psychological evaluation of S.C. on which TYC relied in part for its transfer request. We affirm the
trial court's transfer order.

 At the transfer/release hearing, Leonard Cucolo, court liaison for TYC, provided
copies of TYC's business records related to S.C. When TYC sought to admit the records, S.C.
objected that the records included pre-sentence reports from the Austin Police Department. The trial
court stated that it was admitting the exhibits but would not consider the police reports. S.C. then
immediately objected "with regard to the psychological evaluation" performed in October 2005 by
associate psychologist Jackie Daiss, complaining that S.C. was not formally warned of his Miranda (1)
rights. The court noted that S.C. had already been sentenced and then overruled S.C.'s objection
when his attorney could produce no case law to support his objection. On appeal, S.C. complains
that the trial court erred in admitting Daiss's report because the lack of Miranda warnings violated
his constitutional rights against self-incrimination.

 TYC initially contends that S.C. waived any objection to Daiss's report because his
objection was untimely, made immediately after the trial court admitted the records with the caveat
that it would not consider the pre-sentencing police reports, and not sufficiently specific because S.C.
did not specify exactly where in the exhibits the objectionable report was located. (2) We disagree and
hold that S.C., by raising his objection immediately after his objection to the police reports and by
specifying that it was Daiss's report to which he objected, sufficiently preserved his complaints
related to his Fifth Amendment rights under the federal constitution. (3)

 After objecting to the admission of Daiss's report, S.C. called her as a witness. Daiss
essentially testified to the same information that was included in her report. She said that S.C. had
made good progress until he was transferred to a different unit, that he claimed he shot the victim
in self-defense, and that he showed a lack of empathy and remorse for the offense. She believed S.C.
was dishonest in taking a psychological test and recommended that he be transferred to TDCJ. 
Daiss's report recites the same opinions and states that the evaluation was requested to aid TYC in
"determining whether [S.C.] should be returned to court for a possible waiver of his minimum period
of confinement or be transferred to" TDCJ. At the beginning of the assessment, S.C. "was informed
that the results of psychological testing and clinical interview would not be confidential and would
be used to assist" TYC in making a recommendation in S.C.'s case. Daiss explained to S.C. "that
the evaluation would become part of his permanent record available to all decision-making
authorities," and S.C. said he understood the purpose of the assessment and agreed to participate. 

 S.C. also called as witnesses his TYC caseworker, who testified that he had not made
sufficient progress with his treatment and seemed to have developed a self-defeating attitude; and
five juvenile corrections officers who supervised him and testified that he had been cooperative,
polite, and respectful and was not disruptive. At the conclusion of the hearing, the trial court said
it was taking as true S.C.'s claim of self-defense and stated, [W]hether you feel like you had some justification for this murder or not, there has
to be an emotional reaction to what you saw and experienced and what happened. 
And I don't see any. I haven't seen any today. I don't see any in the records. I don't
see any ability to have any feeling for human life. That makes you, sir, a dangerous
person. . . . But I don't care how you play it out, whether you killed this man in cold
blood, or want to believe, and it's true in your heart, that it was self-defense, you
better find some ability to connect with your conscience. You better find some
reason to change.

 We review a trial court's order transferring a juvenile to TDCJ custody for an abuse
of discretion. In re F.D., 245 S.W.3d 110, 113 (Tex. App.--Dallas 2008, no pet.); In re D.L.,
198 S.W.3d 228, 229 (Tex. App.--San Antonio 2006, pet. denied); In re C.L., Jr., 874 S.W.2d 880,
886 (Tex. App.--Austin 1994, no writ). 

 S.C. complains that the admission of Daiss's report during the transfer/release hearing
violated his Fifth Amendment privilege against self-incrimination. Assuming that S.C. did not waive
any error by calling Daiss to testify about the conclusions she reached and included in her report, see
Leday v. State, 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998) ("overruling an objection to
evidence will not result in reversal when other such evidence was received without objection, either
before or after the complained-of ruling"), a transfer/release hearing is not a trial--a juvenile's guilt
or innocence has already been determined and a sentence imposed. In re M.M., No. 03-06-00396-CV, 2008 Tex. App. LEXIS 981, at *9-10 (Tex. App.--Austin Feb. 6, 2008, pet. denied) (mem. op.);
In re D.L., 198 S.W.3d at 230; In re C.L., Jr., 874 S.W.2d at 884-85. The conduct for which S.C.
is being punished was already considered by the trial court, and S.C. was sentenced to a term of forty
years. In this transfer/release hearing, the trial court was simply considering whether to continue
S.C.'s confinement or allow his supervised release. Thus, in this "second chance hearing," "due
process requirements are not as stringent as those in an actual trial." In re J.M.O., 980 S.W.2d 811,
813 (Tex. App.--San Antonio 1998, pet. denied); see In re D.L., 198 S.W.3d at 230; In re D.S.,
921 S.W.2d 383, 387 (Tex. App.--Corpus Christi 1996, writ dism'd w.o.j.). 

 Section 54.11, which governs transfer/release hearings, provides that a trial court
considering whether to release a juvenile under supervision or transfer him to TDCJ custody may
consider "written reports from probation officers, professional court employees, professional
consultants or employees of" TYC, provided that the juvenile is allowed "access to all written matter
to be considered by the court" and "previous examination of all reports on and evaluations and
examinations of or relating to him that may be used in the hearing." Tex. Fam. Code Ann.
§ 54.11(d), (e). (4) As we recently said in In re M.M.:

Thus, because a transfer hearing is not a stage of a criminal prosecution, the hearing
does not require the same stringent requirements as a trial in which a person's guilt
is determined, and the statute expressly provides for the consideration of the
[psychological evaluation conducted for the purposes of the transfer hearing], we
hold that the trial court did not err in admitting the evaluation.



2008 Tex. App. LEXIS 981, at *11. S.C. has presented us with no argument or authority explaining
why we should not follow our earlier decision. Further, in In re F.D., our sister court held that the
trial court's consideration of a psychological exam conducted for a transfer/release hearing when the
psychologist did not appear for the hearing did not violate the juvenile's Sixth Amendment rights,
noting that the transfer hearing "is dispositional rather than adjudicative in nature." 245 S.W.3d at
113-14. (5)

 We hold that the trial court did not abuse its discretion in admitting Daiss's report into
evidence during S.C.'s transfer/release hearing. We overrule S.C.'s sole issue on appeal and affirm
the trial court's transfer order.


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear, and Pemberton

Affirmed

Filed: July 3, 2008
1. See Miranda v. Arizona, 384 U.S. 436, 478 (1966).
2. The three exhibits together consist of more than 1,000 pages of reports. 
3. In his brief, S.C. presents argument exclusively related to his Fifth Amendment right
against self-incrimination. Although he refers in his statement of his points of error to the Fourteenth
Amendment and to article I, sections 10 and 19 of the Texas Constitution, he does not present any
argument related to those provisions, nor did he refer to anything other than his Miranda rights at
trial. S.C. has therefore waived any state and Fourteenth Amendment complaints. See Tex. R. App.
P. 33.1(a)(1), 38.1(h); Dewberry v. State, 4 S.W.3d 735, 748 (Tex. Crim. App. 1999); Stahle v. State,
970 S.W.2d 682, 692 (Tex. App.--Dallas 1998, pet. ref'd); Martinez v. State, 969 S.W.2d 497, 499
(Tex. App.--Austin 1998, no pet.).
4. See In re D.W., 933 S.W.2d 353, 358 (Tex. App.--Beaumont 1996, writ denied) (juvenile
argued that admission of psychological records violated his Fifth Amendment rights; court overruled
point as inadequately briefed because it was multifarious and because juvenile did not "produce any
argument or authority in support of a challenge to the constitutionality of [section 54.11(d)] which
expressly provides the trial court may consider the written reports"); see also In re J.M.O.,
980 S.W.2d 811, 813 (Tex. App.--San Antonio 1998, pet. denied) (considering juvenile's argument
that use of TYC report in transfer/release hearing violated his right to confront witnesses and holding
that due process requirements are less strict in transfer/release hearing than in actual trial and that
because juvenile must be given reports in advance, "[s]hould there be a question regarding the
genuineness of these reports, the juvenile's attorney may call the authors of the reports for the
purpose of cross-examination. This process adequately provides for the confrontation rights of the
juvenile." (citation omitted)).
5. See also In re N.B., No. 03-97-00766-CV, 1999 Tex. App. LEXIS 2775, at *2-4
(Tex. App.--Austin Apr. 15, 1999, no pet.) (not designated for publication) (in appeal from order
certifying juvenile for trial as adult, court followed sister courts and overruled argument that use of
court-ordered psychological evaluation violated right against self-incrimination) (citing In re J.C.J.,
900 S.W.2d 753, 754 (Tex. App.--Tyler 1995, no writ); In re C.J.P., 650 S.W.2d 465, 466
(Tex. App.--Houston [14th Dist.] 1983, no writ); In re A.D.P., 646 S.W.2d 568, 569
(Tex. App.--Houston [14th Dist.] 1982, no writ); In re K.W.M., 598 S.W.2d 660, 661-62
(Tex. App.--Houston [14th Dist.] 1980, no writ)).