# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00397-CV

### In the Matter of S. C.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-21,433, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In March 2002, the trial court found that S.C., who was sixteen at the time, had committed the offense of capital murder when he shot and killed Jesse Rangel, Jr., during an aggravated robbery, adjudicated him delinquent, and committed him to the custody of the Texas Youth Commission for a determinate forty-year sentence. In February 2006, TYC asked to have S.C. transferred from TYC custody to the Texas Department of Criminal Justice to serve the remainder of his sentence. On April 6, 2006, the trial court held a hearing on TYC's transfer request (the "transfer/release hearing"), *see* Tex. Fam. Code Ann. § 54.11 (West Supp. 2007) (on receipt of TYC request for transfer to TDCJ, court must hold hearing and decide whether to transfer juvenile or release juvenile under supervision), and ordered S.C. transferred to TDCJ custody for the completion of his sentence. S.C. appeals, arguing that the trial court erred in admitting into evidence a recent psychological evaluation of S.C. on which TYC relied in part for its transfer request. We affirm the trial court's transfer order.

At the transfer/release hearing, Leonard Cucolo, court liaison for TYC, provided copies of TYC's business records related to S.C. When TYC sought to admit the records, S.C.

objected that the records included pre-sentence reports from the Austin Police Department. The trial

court stated that it was admitting the exhibits but would not consider the police reports. S.C. then

immediately objected "with regard to the psychological evaluation" performed in October 2005 by

associate psychologist Jackie Daiss, complaining that S.C. was not formally warned of his *Miranda*[1]

rights. The court noted that S.C. had already been sentenced and then overruled S.C.'s objection

when his attorney could produce no case law to support his objection. On appeal, S.C. complains

that the trial court erred in admitting Daiss's report because the lack of *Miranda* warnings violated

his constitutional rights against self-incrimination.

TYC initially contends that S.C. waived any objection to Daiss's report because his

objection was untimely, made immediately after the trial court admitted the records with the caveat

that it would not consider the pre-sentencing police reports, and not sufficiently specific because S.C.

did not specify exactly where in the exhibits the objectionable report was located.[2] We disagree and

hold that S.C., by raising his objection immediately after his objection to the police reports and by

specifying that it was Daiss's report to which he objected, sufficiently preserved his complaints

related to his Fifth Amendment rights under the federal constitution.[3]

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

[2] The three exhibits together consist of more than 1,000 pages of reports.

[3] In his brief, S.C. presents argument exclusively related to his Fifth Amendment right against self-incrimination. Although he refers in his statement of his points of error to the Fourteenth Amendment and to article I, sections 10 and 19 of the Texas Constitution, he does not present any argument related to those provisions, nor did he refer to anything other than his *Miranda* rights at trial. S.C. has therefore waived any state and Fourteenth Amendment complaints. *See* Tex. R. App. P. 33.1(a)(1), 38.1(h); *Dewberry v. State*, 4 S.W.3d 735, 748 (Tex. Crim. App. 1999); *Stahle v. State*, 970 S.W.2d 682, 692 (Tex. App.—Dallas 1998, pet. ref'd); *Martinez v. State*, 969 S.W.2d 497, 499 (Tex. App.—Austin 1998, no pet.).

After objecting to the admission of Daiss's report, S.C. called her as a witness. Daiss essentially testified to the same information that was included in her report. She said that S.C. had made good progress until he was transferred to a different unit, that he claimed he shot the victim in self-defense, and that he showed a lack of empathy and remorse for the offense. She believed S.C. was dishonest in taking a psychological test and recommended that he be transferred to TDCJ. Daiss's report recites the same opinions and states that the evaluation was requested to aid TYC in "determining whether [S.C.] should be returned to court for a possible waiver of his minimum period of confinement or be transferred to" TDCJ. At the beginning of the assessment, S.C. "was informed that the results of psychological testing and clinical interview would not be confidential and would be used to assist" TYC in making a recommendation in S.C.'s case. Daiss explained to S.C. "that the evaluation would become part of his permanent record available to all decision-making authorities," and S.C. said he understood the purpose of the assessment and agreed to participate.

S.C. also called as witnesses his TYC caseworker, who testified that he had not made sufficient progress with his treatment and seemed to have developed a self-defeating attitude; and five juvenile corrections officers who supervised him and testified that he had been cooperative, polite, and respectful and was not disruptive. At the conclusion of the hearing, the trial court said it was taking as true S.C.'s claim of self-defense and stated,

> [W]hether you feel like you had some justification for this murder or not, there has to be an emotional reaction to what you saw and experienced and what happened. And I don't see any. I haven't seen any today. I don't see any in the records. I don't see any ability to have any feeling for human life. That makes you, sir, a dangerous person. . . . But I don't care how you play it out, whether you killed this man in cold blood, or want to believe, and it's true in your heart, that it was self-defense, you better find some ability to connect with your conscience. You better find some reason to change.

3

We review a trial court's order transferring a juvenile to TDCJ custody for an abuse of discretion. *In re F.D.*, 245 S.W.3d 110, 113 (Tex. App.—Dallas 2008, no pet.); *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—San Antonio 2006, pet. denied); *In re C.L., Jr.*, 874 S.W.2d 880, 886 (Tex. App.—Austin 1994, no writ).

S.C. complains that the admission of Daiss's report during the transfer/release hearing violated his Fifth Amendment privilege against self-incrimination. Assuming that S.C. did not waive any error by calling Daiss to testify about the conclusions she reached and included in her report, *see Leday v. State*, 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998) ("overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"), a transfer/release hearing is not a trial—a juvenile's guilt or innocence has already been determined and a sentence imposed. *In re M.M.*, No. 03-06-00396-CV, 2008 Tex. App. LEXIS 981, at *9-10 (Tex. App.—Austin Feb. 6, 2008, pet. denied) (mem. op.); *In re D.L.*, 198 S.W.3d at 230; *In re C.L., Jr.*, 874 S.W.2d at 884-85. The conduct for which S.C. is being punished was already considered by the trial court, and S.C. was sentenced to a term of forty years. In this transfer/release hearing, the trial court was simply considering whether to continue S.C.'s confinement or allow his supervised release. Thus, in this "second chance hearing," "due process requirements are not as stringent as those in an actual trial." *In re J.M.O.*, 980 S.W.2d 811, 813 (Tex. App.—San Antonio 1998, pet. denied); *see In re D.L.*, 198 S.W.3d at 230; *In re D.S.*, 921 S.W.2d 383, 387 (Tex. App.—Corpus Christi 1996, writ dism'd w.o.j.).

Section 54.11, which governs transfer/release hearings, provides that a trial court considering whether to release a juvenile under supervision or transfer him to TDCJ custody may consider "written reports from probation officers, professional court employees, professional

consultants or employees of" TYC, provided that the juvenile is allowed "access to all written matter to be considered by the court" and "previous examination of all reports on and evaluations and examinations of or relating to him that may be used in the hearing." Tex. Fam. Code Ann. § 54.11(d), (e).[4] As we recently said in *In re M.M.*:

> Thus, because a transfer hearing is not a stage of a criminal prosecution, the hearing does not require the same stringent requirements as a trial in which a person's guilt is determined, and the statute expressly provides for the consideration of the [psychological evaluation conducted for the purposes of the transfer hearing], we hold that the trial court did not err in admitting the evaluation.

2008 Tex. App. LEXIS 981, at *11. S.C. has presented us with no argument or authority explaining why we should not follow our earlier decision. Further, in *In re F.D.*, our sister court held that the trial court's consideration of a psychological exam conducted for a transfer/release hearing when the psychologist did not appear for the hearing did not violate the juvenile's Sixth Amendment rights,

---

[4] *See In re D.W.*, 933 S.W.2d 353, 358 (Tex. App.—Beaumont 1996, writ denied) (juvenile argued that admission of psychological records violated his Fifth Amendment rights; court overruled point as inadequately briefed because it was multifarious and because juvenile did not "produce any argument or authority in support of a challenge to the constitutionality of [section 54.11(d)] which expressly provides the trial court may consider the written reports"); *see also In re J.M.O.*, 980 S.W.2d 811, 813 (Tex. App.—San Antonio 1998, pet. denied) (considering juvenile's argument that use of TYC report in transfer/release hearing violated his right to confront witnesses and holding that due process requirements are less strict in transfer/release hearing than in actual trial and that because juvenile must be given reports in advance, "[s]hould there be a question regarding the genuineness of these reports, the juvenile's attorney may call the authors of the reports for the purpose of cross-examination. This process adequately provides for the confrontation rights of the juvenile." (citation omitted)).

noting that the transfer hearing "is dispositional rather than adjudicative in nature." 245 S.W.3d at 113-14.[5]

We hold that the trial court did not abuse its discretion in admitting Daiss's report into evidence during S.C.'s transfer/release hearing. We overrule S.C.'s sole issue on appeal and affirm the trial court's transfer order.

_____

David Puryear, Justice

Before Justices Patterson, Puryear, and Pemberton

Affirmed

Filed: July 3, 2008

---

[5] *See also In re N.B.*, No. 03-97-00766-CV, 1999 Tex. App. LEXIS 2775, at *2-4 (Tex. App.—Austin Apr. 15, 1999, no pet.) (not designated for publication) (in appeal from order certifying juvenile for trial as adult, court followed sister courts and overruled argument that use of court-ordered psychological evaluation violated right against self-incrimination) (citing *In re J.C.J.*, 900 S.W.2d 753, 754 (Tex. App.—Tyler 1995, no writ); *In re C.J.P.*, 650 S.W.2d 465, 466 (Tex. App.—Houston [14th Dist.] 1983, no writ); *In re A.D.P.*, 646 S.W.2d 568, 569 (Tex. App.—Houston [14th Dist.] 1982, no writ); *In re K.W.M.*, 598 S.W.2d 660, 661-62 (Tex. App.—Houston [14th Dist.] 1980, no writ)).