NO. 07-09-0386-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 3, 2010

_____

IN THE MATTER OF R.A.

_____

FROM THE 106TH DISTRICT COURT OF GARZA COUNTY;

NO. 350; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

R.A., born on November 1, 1988, committed sexual assault and indecency with a child against an eight year old female and an eight year old male on separate occasions when he was fourteen years old. When R.A. was sixteen, the State brought charges alleging delinquent conduct. In May 2007, R.A. pled not true, and a jury found that he engaged in delinquent conduct as defined in section 51.03(a)(1) of the Texas Family Code.[1] Following his disposition hearing, the jury found that R.A. should be committed

---

[1]R.A. was found to have engaged in five counts of aggravated sexual assault (Tex. Penal Code Ann. § 22.021) (Vernon Supp. 2010), a first degree felony (§ 22.021(e)), and two counts of indecency with a child (Tex. Penal Code Ann. § 21,11), a third degree felony (§ 21.11(a)(2)(B)).

to the Texas Youth Commission (TYC) with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for a determinate sentence of seventeen years. The trial court adopted the jury's finding.

On August 25, 2009, when it was determined that R.A. would not complete the statutory minimum sentence of three years[2] by his twenty-first birthday,[3] TYC referred R.A. to the trial court for a release or transfer hearing. See Tex. Hum. Res. Code Ann. §§ 61.079(a) and 61.081 (Vernon Supp. 2010). Pursuant to section 54.11 of the Texas Family Code, the court gave notice of the hearing to the parties. Following the presentation of testimony and evidence, the trial court ordered that R.A. be transferred to the custody of TDCJ for completion of his seventeen year sentence. This appeal followed.

By a sole issue, Appellant questions whether the trial court abused its discretion in transferring him to the Institutional Division of TDCJ. The State of Texas did not favor us with a brief.[4] Thus, this being a civil case, we will accept as true facts provided by Appellant in his brief. See Tex. R. App. P. 38.1(g).

---

[2]Tex. Hum. Res. Code Ann. § 61.081(f)(2) (Vernon Supp. 2010).

[3]In 2007, the Legislature reduced the age of confinement at TYC from twenty-one years of age to nineteen. See Act of May 25, 2007, 80th Leg., R.S., ch. 263, §§ 50 and 53, 2007 Tex. Gen. Laws 421, 447, 449. The changes became effective June 8, 2007. Section 67 of the Act provides that a child who is adjudicated before the effective date of the Act is governed by the law in effect when the child was adjudicated and the former law is continued in effect for that purpose. See generally In re T.G., No. 03-07-00543-CV, 2008 Tex. App. LEXIS 4551, at *18-20 (Tex.App.--Austin June 19, 2008, pet. denied) (mem. op.).

[4]The State's brief was due on May 10, 2010. See Tex. R. App. P. 38.6(b). On October 22, 2010, citing the failure to receive a copy of Appellant's brief, the State did address a letter to the Clerk of this Court requesting a thirty day extension in which to file a response. This method of requesting an extension falls short of the requirements of Rule 38.6(d). Accordingly, the State's request is denied. While Rule 38.8(b) expressly guides this Court as to what to do if an appellant fails to file a brief, there is no corresponding rule to guide us when the State fails to file a brief in response to an appellant's brief. Several

## I. Standard of Review

A trial court's decision to transfer a juvenile from TYC to the Institutional Division of TDCJ is reviewed for abuse of discretion. *In re D.L.*, 198 S.W.3d 228, 229 (Tex.App.--San Antonio 2006, pet. denied). In making this determination, this Court must consider the entire record to ascertain whether the trial court acted without reference to guiding rules and principles. *Id.* If some evidence supports the trial court's decision, there is no abuse of discretion. *In re J.M.O.*, 980 S.W.2d 811, 813 (Tex.App.--San Antonio 1998, pet. denied). An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence supports the trial court's decision. *J.R.W. v. State*, 879 S.W.2d 254, 257 (Tex.App.--Dallas 1994, no writ). We may not, however, reverse a trial court's decision simply because we disagree. *In re R.G.*, 994 S.W.2d 309, 312 (Tex.App.--Houston [1st Dist.] 1999, pet. denied).

## II. Applicable Law

When a juvenile is given a determinate sentence, upon TYC's request to transfer the juvenile to TDCJ, the trial court is required to hold a hearing. *See* Tex. Fam. Code Ann. § 54.11 (Vernon Supp. 2010). *See also* Tex. Hum. Res. Code Ann. § 61.079(a) (Vernon Supp. 2010). At the hearing, a trial court may consider written reports from probation officers, professional court employees, professional consultants, or TYC

---

intermediate appellate courts, including this Court, have held that whenever the State fails to file a brief, an appellate court should conduct an independent analysis of the merits of the appellant's claim of error, limited to the arguments raised at trial by the State, to determine if there was error. *See Siverand v. State*, 89 S.W.3d 216, 220 (Tex.App.–Corpus Christi 2002, no pet.); *Haley v. State,* No. 13-02-0033-CR, 2006 Tex.App. LEXIS 391 (Tex.App.–Corpus Christi Nov. 22, 2006, pet. ref'd) (not designated for publication); *Mosley v. State*, Nos. 07-02-0178-CR, 07-02-0179-CR, 2003 Tex.App. LEXIS 6899 (Tex.App.–Amarillo Aug. 12, 2003, pet. ref'd) (not designated for publication). C*f. In re Bowman*, No. 03-07-0418-CR, 2007 Tex.App. LEXIS 9500 (Tex.App.–Austin Dec. 5, 2007, no pet.) (not designated for publication); *Burns v. Rochon*, 190 S.W.3d 263 (Tex.App.–Houston [1st Dist.] 2006, no pet.).

employees, in addition to testimony of witnesses. Tex. Fam. Code Ann. § 54.11(d). Following the hearing, the trial court may either (1) order the return of the juvenile to TYC or (2) order the transfer of the juvenile to the custody of TDCJ for completion of his sentence. § 54.11(i).

Factors the trial court may consider in its decision include (1) the experiences and character of the person before and after commitment to TYC; (2) the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed; (3) the abilities of the juvenile to contribute to society; (4) the protection of the victim of the offense or any member of the victim's family; (5) the recommendations of TYC and the prosecuting attorney; (6) the best interests of the juvenile; and (7) any other factor relevant to the issue being decided. § 54.11(k). Not every factor need be considered and the trial court may assign different weights to the factors considered. *In re R.G.*, 994 S.W.2d at 312.

## III. Analysis

### A. The State's Witnesses

The trial court heard testimony from seven witnesses, including R.A.[5] Leonard Cucolo, TYC liaison to the courts, opened the testimony for the State and testified that TYC's recommendation was for R.A. to be released to adult parole for the remainder of his determinate sentence with intense supervision, including wearing a leg monitor. He explained the serious procedure TYC follows in deciding whether to recommend a

---

[5]Both victims' mothers and R.A.'s mother testified with the aid of an interpreter.

juvenile for transfer to prison or for release to adult parole. According to Cucolo, a juvenile who has severe behavioral problems, fails to progress in programs, and is a great risk to the community will likely be transferred to prison whereas a juvenile who completes treatment and programs, exhibits stable behavior, and presents a low risk to the community based on a psychological evaluation will be considered for release. According to Cucolo, after a juvenile is evaluated by a psychologist, TYC department heads meet to review and consider the information and determine whether the juvenile is on a particular track. The committee, who considers all factors listed in section 54.11 of the Family Code, then votes on whether to release the juvenile to parole and sends its recommendation to the facility's superintendent. If the superintendent agrees with the committee's recommendation, he approves it and forwards it to Cucolo's office in Austin. Several other TYC personnel review the recommendation and either approve or disapprove it before it finally reaches TYC's Executive Director, who makes the final decision on whether to recommend a release or transfer to prison. Cucolo added that the decision to release a sex offender is not a decision that is "lightly made."

Cucolo testified that R.A. eventually accepted responsibility for his conduct, participated in resocialization programs, and successfully completed a sex offender treatment program. Academically, R.A. lacked only one credit in algebra for a high school diploma as opposed to a General Equivalency Diploma. He also earned a vocational certificate in building cabinets. R.A.'s behavior was described as "excellent," and he only had one incident of misconduct for failing to report a fight in a dormitory, which R.A. successfully appealed.

Cucolo explained that the goal was to have R.A. released to parole in Palestine, Texas, where his parents own a home. Palestine is not in Garza County where the victims and their families reside. Essentially, R.A. would be under house arrest for the remainder of his determinate sentence. Cucolo's written report indicated that one of the conditions of release would be R.A.'s participation in a "Super Intensive Supervision Program" (SISP). He would also be required to continue sex offender programming and either maintain stable employment or school enrollment. No extracurricular activities would be allowed.

Brandt Taylor, Chief Juvenile Probation Officer for Garza County, recommended that R.A. serve the remainder of his sentence in prison. Although he testified that the success rate for adult sex offenders he has supervised was "not very good," he could not say whether juveniles would reoffend after age eighteen. Taylor testified contrary to Cucolo that Cucolo had informed him that R.A. had not admitted his crimes, which Taylor interpreted as a failure by R.A. to cooperate. Taylor also testified that the male child victim was adjusting well but his progress would be hindered if R.A. was released to adult parole.

The male child victim's mother testified that, prior to adjudication, R.A. had threatened the victim and her family if the abuse was reported. According to her, the victim is unable to trust others, is nervous and sad, and has trouble sleeping. The family does not talk about the abuse, and television programs are censored for sexual content. She believes R.A. poses a danger to her family and believes parole would be an "injustice." She testified that she wanted R.A. to admit his crimes. In her opinion, if R.A. was granted parole, she would want him to live as far away as possible, but knew

6

that R.A.'s family still resided in Garza County notwithstanding that they owned a home in Palestine, Texas.

The female victim's mother testified that her family and R.A.'s family used to be neighbors, but they have since moved. After the abuse, the female victim developed nervous habits, experienced headaches, and did not do well in school. She requires medication to function. The victim's mother wants R.A. to admit the truth about the abuse.

### B.  R. A.'s Witnesses

Cucolo was recalled to clarify Taylor's testimony that R.A. was not accepting responsibility for his conduct. During his testimony, Taylor suggested that Cucolo had told him R.A. had not admitted his crimes, which Taylor interpreted as a lack of cooperation. Cucolo, however, testified that R.A. had confessed his guilt while at TYC.

R.A.'s case worker, Destany Carter, testified that a requirement of the sex offender treatment program is to provide a description of the offense. When R.A. was first confined to TYC, he denied the abuse. Eventually, R.A. confessed to his previous case worker and then did so again in a group setting after Carter was assigned to his case. Carter testified that she visited with R.A. on a daily basis and was satisfied with his progress. R.A. took a leadership role while at TYC, received recognition for his behavior, including two student-of-the-month awards, and performed well academically. R.A. also learned a trade while at TYC and received recognition for completing core curriculum from the National Center for Construction, Education, and Research to build cabinets. R.A. is also certified to work on auto air conditioners.

7

Carter testified that after seriously considering the victims and their families, she was comfortable recommending R.A. for release to parole away from where the victims reside. During cross-examination, she revealed that she has counseled over one hundred sex offenders and has recommended "very few" for release. Again during cross-examination, she testified that R.A. admitted to one incident of abuse against his victims, yet was found to have engaged in multiple incidents with each of them. According to Carter, R.A. abused his male victim because he was young and R.A. believed he would get away with it. With his female victim, he acted more on impulse when she visited his home. From the tenor of the questions during cross-examination, she testified it was possible for R.A. to be a potential future threat to those who are smaller and weaker than himself.

Appellant's mother testified that she and R.A.'s father own a home in Palestine, Texas, outside Garza County. However, they do not have employment waiting for them and her husband has been unable to work since 2008 due to eye problems. He has had five eye surgeries and she did not know when his treatment would be completed. In response to questions during cross-examination, she testified that she did not know R.A. was capable of committing the crimes he did and could not guarantee this would never happen again while under her supervision.

With the aid of an interpreter, R.A. was admonished about testifying. He admitted the abuse against his two child victims and apologized to the families. He also admitted denying his conduct when he was first institutionalized, then taking responsibility for his action during the course of his treatment. During cross-examination, he was asked to describe the acts committed against his victims, which he

8

did.  He believed the victims would not report him because of their youth.  He also admitted threatening the lives of his male victim and his family.

R.A. testified that as part of his treatment, he was required to keep a notebook in which he wrote letters to his victims apologizing for his conduct.  The letters, however, were only part of the program and were not intended to be mailed to the victims.  He explained that he first denied the allegations because he was scared after a judge at his first court appearance told him he could get a life sentence.

R.A. hoped to move to Palestine and work as an auto mechanic and build cabinets.  He acknowledged that he would have to register as a sex offender once his parole was concluded.  He explained that his treatment made him aware that pornography was one of his high risk factors for offending.  Several other risk factors included R.A. being confronted with difficult situations and dealing with others.  According to a psychological evaluation written by Dr. Greg W. Joiner, Ph.D., which was admitted into evidence, other risk factors included limited sexual contact, limited social network, and marginal social skills.  Dr. Joiner also listed certain protective factors indicative of not re-offending including absence of abuse, functional and nurturing family, absence of sexual acting out, absence of delinquency, absence of substance abuse, and absence of behavioral problems in an educational setting.  Dr. Joiner concluded, "[o]verall, [R.A.] does not present as a severe risk for re-offense.  He has some significant protective factors."

Following all the testimony and brief closing arguments, the trial court expressed certain concerns.  At the time of the hearing, R.A. was two weeks from his twenty-first

birthday and had not yet completed the minimum three year sentence. While the trial court commended R.A. on his treatment and progress, it appeared that R.A.'s testimony was "regurgitation." The court seriously considered R.A. being amenable to rehabilitation, but was concerned about Cucolo's testimony and report that R.A. can conform his behavior within the confines of a high restriction facility. If paroled, the court doubted that R.A. would have the intensive supervision he requires. The court concluded, "just quite honestly," it "would not feel secure in approving and ordering a release of [R.A.] when he is several months away from even serving the minimum period of confinement." The court then ordered that R.A. be transferred to TDCJ.

Notwithstanding the testimony of Cucolo and Carter that R.A. be released to parole, the trial court was under no duty to follow their recommendations. *J.R.W.*, 879 S.W.2d at 256. After reviewing the entire record and taking into consideration the factors enumerated in section 54.11(k) of the Family Code, we find there is some evidence to support the trial court's decision to transfer R.A. to the Institutional Division of TDCJ. *See In re J.M.O.*, 980 S.W.2d at 813. Consequently, we find no abuse of discretion in the trial court's decision. R.A.'s sole issue is overruled.

## Conclusion

Accordingly, the trial court's order transferring custody of R.A. to the Institutional Division of the Texas Department of Criminal Justice for completion of his seventeen year sentence is affirmed.

Patrick A. Pirtle
Justice
