NO. 07-09-0386-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

NOVEMBER 3, 2010

 

______________________________

 

 

IN THE MATTER OF R.A.

 

_________________________________

 

FROM THE 106TH DISTRICT COURT OF GARZA
COUNTY;

 

NO. 350; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            R.A., born on November
1, 1988, committed sexual assault and indecency with a child against an eight
year old female and an eight year old male on separate occasions when he was
fourteen years old.  When R.A. was
sixteen, the State brought charges alleging delinquent conduct.  In May 2007, R.A. pled not true, and a jury found
that he engaged in delinquent conduct as defined in section 51.03(a)(1) of the Texas Family Code.[1]  Following his disposition hearing, the jury
found that R.A. should be committed to the Texas Youth Commission (TYC) with a
possible transfer to the Institutional Division of the Texas Department of
Criminal Justice (TDCJ) for a determinate sentence of seventeen years.  The trial court adopted the jury's finding.    

On August 25, 2009, when it was determined that R.A. would
not complete the statutory minimum sentence of three years[2] by
his twenty-first birthday,[3] TYC
referred R.A. to the trial court for a release or transfer hearing.  See
Tex. Hum. Res. Code Ann. §§ 61.079(a) and 61.081 (Vernon Supp.
2010).  Pursuant to section 54.11
of the Texas Family Code, the court gave notice of the hearing to the parties.  Following the presentation of testimony and
evidence, the trial court ordered that R.A. be transferred to the custody of
TDCJ for completion of his seventeen year sentence.  This appeal followed.

By a sole issue, Appellant questions whether the trial court abused
its discretion in transferring him to the Institutional Division of TDCJ.  The State of Texas did not favor us with a
brief.[4]  Thus, this being a civil case, we will accept
as true facts provided by Appellant in his brief.  See Tex.
R. App. P. 38.1(g).  

I. Standard of Review

            A trial court's decision
to transfer a juvenile from TYC to the Institutional Division of TDCJ is reviewed
for abuse of discretion.  In re D.L., 198 S.W.3d
228, 229 (Tex.App. --San Antonio 2006, pet. denied).
 In making this determination, this Court
must consider the entire record to ascertain whether the trial court acted
without reference to guiding rules and principles.  Id.  If some evidence supports the trial court's
decision, there is no abuse of discretion. 
In re J.M.O.,
980 S.W.2d 811, 813 (Tex.App.--San Antonio 1998, pet. denied).  An abuse of discretion does not exist if the
trial court bases its decision on conflicting evidence and some evidence
supports the trial court's decision.  J.R.W. v. State, 879
S.W.2d 254, 257 (Tex.App.--Dallas 1994, no writ).  We may not, however, reverse a trial court's
decision simply because we disagree.  In re R.G., 994 S.W.2d
309, 312 (Tex.App.--Houston [1st Dist.] 1999, pet. denied).  

II. Applicable Law

When a juvenile is given a determinate sentence, upon TYC's
request to transfer the juvenile to TDCJ, the trial court is required to hold a
hearing.  See Tex. Fam. Code Ann. § 54.11 (Vernon Supp. 2010).  See
also Tex. Hum. Res. Code Ann. § 61.079(a) (Vernon Supp.
2010).  At the hearing, a trial
court may consider written reports from probation officers, professional court
employees, professional consultants, or TYC employees, in addition to testimony
of witnesses.  Tex.
Fam. Code Ann. § 54.11(d). 
Following the hearing, the trial court may either (1) order the return
of the juvenile to TYC or (2) order the transfer of the juvenile to the custody
of TDCJ for completion of his sentence. 
§ 54.11(i).

            Factors the trial court
may consider in its decision include (1) the experiences and character of the
person before and after commitment to TYC; (2) the nature of the penal offense
that the person was found to have committed and the manner in which the offense
was committed; (3) the abilities of the juvenile to contribute to society; (4)
the protection of the victim of the offense or any member of the victim's
family; (5) the recommendations of TYC and the prosecuting attorney; (6) the
best interests of the juvenile; and (7) any other factor relevant to the issue
being decided.  § 54.11(k).  Not every factor need be considered and the
trial court may assign different weights to the factors considered.  In re R.G., 994 S.W.2d at 312.

III. Analysis

            A.  The State's Witnesses

            The trial court heard testimony from
seven witnesses, including R.A.[5]  Leonard Cucolo, TYC
liaison to the courts, opened the testimony for the State and testified that
TYC's recommendation was for R.A. to be released to adult parole for the
remainder of his determinate sentence with intense supervision, including
wearing a leg monitor.  He explained the
serious procedure TYC follows in deciding whether to recommend a juvenile for
transfer to prison or for release to adult parole.  According to Cucolo,
a juvenile who has severe behavioral problems, fails to progress in programs,
and is a great risk to the community will likely be transferred to prison
whereas a juvenile who completes treatment and programs, exhibits stable
behavior, and presents a low risk to the community based on a psychological
evaluation will be considered for release. 
According to Cucolo, after a juvenile is
evaluated by a psychologist, TYC department heads meet to review and consider
the information and determine whether the juvenile is on a particular track.  The committee, who considers all factors
listed in section 54.11 of the Family Code, then votes on whether to release
the juvenile to parole and sends its recommendation to the facility's
superintendent.  If the superintendent
agrees with the committee's recommendation, he approves it and forwards it to Cucolo's office in Austin.  Several other TYC personnel review the
recommendation and either approve or disapprove it before it finally reaches
TYC's Executive Director, who makes the final decision on whether to recommend
a release or transfer to prison. Cucolo added that
the decision to release a sex offender is not a decision that is "lightly
made."

            Cucolo
testified that R.A. eventually accepted responsibility for his conduct, participated
in resocialization programs, and successfully
completed a sex offender treatment program. 
Academically, R.A. lacked only one credit in algebra for a high school
diploma as opposed to a General Equivalency Diploma.  He also earned a vocational certificate in building
cabinets.  R.A.'s behavior was described
as "excellent," and he only had one incident of misconduct for failing
to report a fight in a dormitory, which R.A. successfully appealed.

            Cucolo
explained that the goal was to have R.A. released to parole in Palestine,
Texas, where his parents own a home. 
Palestine is not in Garza County where the victims and their families
reside.  Essentially, R.A. would be under
house arrest for the remainder of his determinate sentence.  Cucolo's written
report indicated that one of the conditions of release would be R.A.'s
participation in a "Super Intensive Supervision Program” (SISP).  He would also be required to continue sex
offender programming and either maintain stable employment or school
enrollment.  No extracurricular
activities would be allowed.  

            Brandt Taylor, Chief
Juvenile Probation Officer for Garza County, recommended that R.A. serve the
remainder of his sentence in prison. 
Although he testified that the success rate for adult sex offenders he
has supervised was "not very good," he could not say whether
juveniles would reoffend after age eighteen. 
Taylor testified contrary to Cucolo that Cucolo had informed him that R.A. had not admitted his
crimes, which Taylor interpreted as a failure by R.A. to cooperate.  Taylor also testified that the male child
victim was adjusting well but his progress would be hindered if R.A. was released
to adult parole.

            The male child victim's
mother testified that, prior to adjudication, R.A. had
threatened the victim and her family if the abuse was reported.  According to her, the victim is unable to
trust others, is nervous and sad, and has trouble sleeping.  The family does not talk about the abuse, and
television programs are censored for sexual content.  She believes R.A. poses a danger to her
family and believes parole would be an "injustice."  She testified that she wanted R.A. to admit
his crimes.  In her opinion, if R.A. was
granted parole, she would want him to live as far away as possible, but knew
that R.A.'s family still resided in Garza County notwithstanding that they
owned a home in Palestine, Texas.

            The female victim's
mother testified that her family and R.A.'s family used to be neighbors, but
they have since moved.  After the abuse,
the female victim developed nervous habits, experienced headaches, and did not
do well in school.  She requires
medication to function.  The victim's
mother wants R.A. to admit the truth about the abuse.

            B.  R. A.'s Witnesses

            Cucolo
was recalled to clarify Taylor's testimony that R.A. was not accepting
responsibility for his conduct.  During
his testimony, Taylor suggested that Cucolo had told
him R.A. had not admitted his crimes, which Taylor interpreted as a lack of
cooperation.  Cucolo,
however, testified that R.A. had confessed his guilt while at TYC.

            R.A.'s case worker, Destany Carter, testified that a requirement of the sex
offender treatment program is to provide a description of the offense.  When R.A. was first confined to TYC, he
denied the abuse.  Eventually, R.A.
confessed to his previous case worker and then did so again in a group setting
after Carter was assigned to his case. 
Carter testified that she visited with R.A. on a daily basis and was
satisfied with his progress.  R.A. took a
leadership role while at TYC, received recognition for his behavior, including
two student-of-the-month awards, and performed well academically. R.A. also
learned a trade while at TYC and received recognition for completing core
curriculum from the National Center for Construction, Education, and Research
to build cabinets.  R.A. is also
certified to work on auto air conditioners.

            Carter testified that
after seriously considering the victims and their families, she was comfortable
recommending R.A. for release to parole away from where the victims reside.  During cross-examination, she revealed that
she has counseled over one hundred sex offenders and has recommended "very
few" for release.  Again during
cross-examination, she testified that R.A. admitted to one incident of abuse
against his victims, yet was found to have engaged in multiple incidents with
each of them.  According to Carter, R.A.
abused his male victim because he was young and R.A. believed he would get away
with it.  With his female victim, he
acted more on impulse when she visited his home.  From the tenor of the questions during
cross-examination, she testified it was possible for R.A. to be a potential
future threat to those who are smaller and weaker than himself.

            Appellant's mother
testified that she and R.A.'s father own a home in Palestine, Texas, outside
Garza County.  However, they do not have
employment waiting for them and her husband has been unable to work since 2008
due to eye problems.  He has had five eye
surgeries and she did not know when his treatment would be completed.  In response to questions during
cross-examination, she testified that she did not know R.A. was capable of
committing the crimes he did and could not guarantee this would never happen
again while under her supervision.

            With the aid of an
interpreter, R.A. was admonished about testifying.  He admitted the abuse against his two child
victims and apologized to the families. 
He also admitted denying his conduct when he was first
institutionalized, then taking responsibility for his action during the course
of his treatment.  During
cross-examination, he was asked to describe the acts committed against his
victims, which he did.  He believed the
victims would not report him because of their youth.  He also admitted threatening the lives of his
male victim and his family.

            R.A. testified that as
part of his treatment, he was required to keep a notebook in which he wrote
letters to his victims apologizing for his conduct.  The letters, however, were only part of the
program and were not intended to be mailed to the victims.  He explained that he first denied the
allegations because he was scared after a judge at his first court appearance
told him he could get a life sentence.

            R.A. hoped to move to
Palestine and work as an auto mechanic and build cabinets.  He acknowledged that he would have to register
as a sex offender once his parole was concluded.  He explained that his treatment made him
aware that pornography was one of his high risk factors for offending.  Several other risk factors included R.A.
being confronted with difficult situations and dealing with others.  According to a psychological evaluation
written by Dr. Greg W. Joiner, Ph.D., which was admitted into evidence, other
risk factors included limited sexual contact, limited social network, and
marginal social skills.  Dr. Joiner also
listed certain protective factors indicative of not re-offending including
absence of abuse, functional and nurturing family, absence of sexual acting
out, absence of delinquency, absence of substance abuse, and absence of behavioral
problems in an educational setting.  Dr.
Joiner concluded, "[o]verall, [R.A.] does not
present as a severe risk for re-offense. 
He has some significant protective factors." 

            Following all the
testimony and brief closing arguments, the trial court expressed certain
concerns.  At the time of the hearing,
R.A. was two weeks from his twenty-first birthday and had not yet completed the
minimum three year sentence.  While the
trial court commended R.A. on his treatment and progress, it appeared that
R.A.'s testimony was "regurgitation." 
The court seriously considered R.A. being amenable to rehabilitation,
but was concerned about Cucolo's testimony and report
that R.A. can conform his behavior within the confines
of a high restriction facility.  If
paroled, the court doubted that R.A. would have the intensive supervision he
requires.  The court concluded,
"just quite honestly," it "would not feel secure in approving
and ordering a release of [R.A.] when he is several months away from even
serving the minimum period of confinement."  The court then ordered that R.A. be
transferred to TDCJ.

            Notwithstanding the testimony
of Cucolo and Carter that R.A. be released to parole,
the trial court was under no duty to follow their recommendations.  J.R.W.,
879 S.W.2d at 256. 
After reviewing the entire record and taking into consideration the
factors enumerated in section 54.11(k) of the Family Code, we find there is
some evidence to support the trial court's decision to transfer R.A. to the
Institutional Division of TDCJ. See In re
J.M.O., 980 S.W.2d at 813.  Consequently, we find no abuse of discretion
in the trial court's decision.  R.A.'s
sole issue is overruled.

Conclusion

            Accordingly, the trial
court's order transferring custody of R.A. to the Institutional Division of the
Texas Department of Criminal Justice for completion of his seventeen year
sentence is affirmed.

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 











[1]R.A.
was found to have engaged in five counts of aggravated sexual assault (Tex.
Penal Code Ann. § 22.021) (Vernon Supp. 2010), a first degree felony (§
22.021(e)), and two counts of indecency with a child (Tex. Penal Code Ann. § 21,11), a third degree felony (§ 21.11(a)(2)(B)).





[2]Tex. Hum. Res. Code Ann. § 61.081(f)(2)
(Vernon Supp. 2010).

 





[3]In
2007, the Legislature reduced the age of confinement at TYC from twenty-one
years of age to nineteen.  See Act of May 25, 2007, 80th Leg.,
R.S., ch. 263, §§ 50 and 53, 2007 Tex. Gen. Laws 421,
447, 449.  The changes became effective
June 8, 2007.  Section 67 of the Act
provides that a child who is adjudicated before the effective date of the Act
is governed by the law in effect when the child was adjudicated and the former
law is continued in effect for that purpose. 
See generally  In re T.G., No. 03-07-00543-CV,
2008 Tex. App. LEXIS 4551, at *18-20 (Tex.App.--Austin June 19, 2008, pet.
denied) (mem. op).

 





[4]The State=s brief was due on May 10, 2010.  See Tex.
R. App. P. 38.6(b).  On October 22, 2010,
citing the failure to receive a copy of Appellant's brief, the State did
address a letter to the Clerk of this Court 
requesting a thirty day extension in which to file a response.  This method of requesting an extension falls
short of the requirements of Rule 38.6(d). 
Accordingly, the State's request is denied.  While Rule 38.8(b) expressly guides this
Court as to what to do if an appellant fails to file a brief, there is no
corresponding rule to guide us when the State fails to file a brief in response
to an appellant=s brief. 
Several intermediate appellate courts, including this Court, have held
that whenever the State fails to file a brief, an appellate court should
conduct an independent analysis of the merits of the appellant=s claim of error, limited to the arguments raised at
trial by the State, to determine if there was error.  See Siverand v.
State, 89 S.W.3d 216, 220 (Tex.App.BCorpus Christi 2002, no pet.); Haley
v. State, No. 13-02-0033-CR, 2006 Tex.App. LEXIS 391 (Tex.App.BCorpus Christi Nov. 22, 2006, pet. ref=d) (not designated for publication); Mosley v.
State, Nos. 07-02-0178-CR, 07-02-0179-CR, 2003 Tex.App. LEXIS 6899 (Tex.App.BAmarillo Aug. 12, 2003, pet. ref=d) (not designated for publication).  Cf. In re Bowman, No.
03-07-0418-CR, 2007 Tex.App. LEXIS 9500 (Tex.App.BAustin Dec. 5, 2007, no pet.) (not designated for
publication); Burns v. Rochon, 190
S.W.3d 263 (Tex.App.BHouston [1st Dist.] 2006, no
pet.).  





[5]Both
victims' mothers and R.A.'s mother testified with the aid of an interpreter.